Brooke Dean MARTIN, Respondent,

v.

**DIRECTOR OF REVENUE, Appellant.**

**No. WD 68113.**

Missouri Court of Appeals,
Western District.

April 1, 2008.

---

Karen Anderson Winn, Jefferson City, for appellant.

Kerry G. Rowden, Tuscumbia, for respondent.

RONALD R. HOLLIGER, Presiding Judge.

The Director of Revenue ("DOR") appeals a judgment setting aside an administrative suspension of Brooke D. Martin's ("Martin") driver's license for driving with a blood alcohol content in excess of .08% in

violation of section 302.505.[1] DOR contends that the trial court's finding that the arresting officer lacked probable cause to believe that Martin was driving while intoxicated was not supported by substantial evidence, was against the weight of the evidence, and erroneously declared the law. We reverse.

### Standard of Review

 As in all court-tried civil cases, the standard of review in this case is the one set forth in *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976): the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32. As long as the trial court's judgment is supported by substantial evidence, the appellate court will affirm the judgment, regardless of whether the appellate court would have reached the same result. *Hampton v. Dir. of Revenue,* 22 S.W.3d 217, 220 (Mo.App. W.D.2000). But if the evidence is uncontroverted or admitted, so that the real issue is a legal one as to the legal effect of the evidence, there is no need to defer to the trial court's judgment. *Hinnah v. Dir. of Revenue,* 77 S.W.3d 616, 620 (Mo. banc 2002) (citing *Hampton,* 22 S.W.3d at 220).

### Facts

 We must first note that we are handicapped in our review by the findings of fact made in the court's judgment. Although we recognize the value of having counsel propose forms of judgment, this case well illustrates the problem presented when counsel "stretches" the proposed findings and the judge signs off on the proposed judgment without critical review. As DOR points out and Martin fails to rebut, there are a number of specific findings of fact in the judgment that are simply not supported by **any** evidence. They do not involve issues of interpretation, inference, or nuance, but, rather, are diametrically the opposite of uncontroverted evidence. Nor are they explained by reliance on credibility of even controverted evidence, let alone conflicting evidence. Counsel are always advised, in preparing proposed judgments, to make sure the findings they propose were what was proven by the evidence and not simply what they hope the evidence is.

For example, the judgment recited that Martin's "left tires drifted into the lane to her left one time." The **only** testimony was that Martin's car "crossed over the centerline several times" and that she was "traveling" in the turn lane. In one place, the judgment finds that the officer "improperly" administered the walk and turn, and one—leg stand tests, but, in fact, the undisputed testimony was that these tests were not even administered. The judgment finds that Martin's balance was "otherwise fair and normal," but the only testimony was that she was "swaying slightly." The judgment also finds that the officer admitted that he performed the horizontal gaze nystagmus ("HGN") test improperly, but no such admission appears in the record. Rather, the officer testified that he performed the test in several respects, as he had been trained, but not necessarily in strict compliance with National Highway Traffic Safety Administration ("NHSTA") suggestions. The manner in which he performed the test is important and will be discussed later, but, nevertheless, there was no "admission" that the test was not properly performed. The extent of the erroneous nature of some of these findings has complicated our review, particularly since Martin's brief filed to support the

---

1. All statutory references are to Missouri Revised Statutes (2000) unless otherwise noted.

judgment, failed to make reference to the record (which of course would have been impossible) to support these findings which she proposed to the judge. ·

At 1:40 a.m., a Lake Ozark officer observed an SUV driven by Martin cross the centerline several times. When questioned by the officer, she first stated that she was the "DWI," and later that she was the designated driver. She admitted she had been drinking and said she had had a couple of beers.[2] She explained her erratic driving as the result of failing to put her seatbelt on until after she started driving. The officer could smell a strong odor of alcohol coming from the vehicle.

After exiting the vehicle, the officer administered the HGN test, an alphabet test, a counting test, and a finger—to—nose test. The officer testified that Martin did not correctly follow instructions during the HGN test by continually moving her head until he instructed her to hold it with both hands. He observed distinct nystagmus in both eyes. He also said that she did not follow instructions for the counting test, but only missed one number. She successfully completed the alphabet test but partially failed the finger—to—nose test. She was polite and cooperative and had no slurred speech. Based on his observations, the officer concluded that Martin had been driving while intoxicated and placed her under arrest.

### Discussion

 The level of proof necessary to show probable cause is less than required to establish guilt beyond a reasonable doubt. *Smyth v. Dir. of Revenue*, 57 S.W.3d 927, 930 (Mo.App. S.D.2001) (overruled on other grounds). The question in

an administrative revocation case is not whether, in fact, the driver is intoxicated, but whether an officer has reasonable grounds to believe so. *Soest v. Dir. of Revenue*, 62 S.W.3d 619, 622 (Mo.App. E.D.2001). The court is compelled to assess the facts as they would have appeared to a "prudent, cautious, and trained police officer." *Cox v. Dir. of Revenue*, 37 S.W.3d 304, 307 (Mo.App. S.D.2000). The ultimate test is satisfied "when a police officer observes an unusual or illegal operation of a motor vehicle and observes indicia of intoxication upon coming into contact with the motorist." *Rain v. Dir. of Revenue*, 46 S.W.3d 584, 587 (Mo.App. E.D. 2001).

No issue is raised here about the unusual or illegal operation of the vehicle. Although Martin may offer some excuse for her weaving, that excuse alone does not detract from the officer's analysis of probable cause. *Soest*, 62 S.W.3d at 621. Our attention must focus, therefore, on whether sufficient indicia of intoxication would appear to a prudent, cautious, and trained officer. Martin argues that it would not, based largely on her contentions and the trial court's findings that "[t]here is no NHSTA test for the alphabet and there is [sic] no scientific studies which authorize a counting backwards test and no way of concluding that someone has failed that test." The evidence does not support these findings.

Although an otherwise identified document describing the HGN test protocol was admitted into evidence, there was no testimony about it. The officer only admitted generally that he had been trained how to perform the HGN differently but was read no statement as to how the test argu-

---

**2.** In his report, the officer indicated that Martin said she had three Coronas and two shots of Jägermeister in about one hour just prior to the stop. Because the record does not clearly indicate that she made this detailed admission at the scene before the officer arrested her, we disregard it in assessing whether the officer had probable cause.

ably should be performed. *See Gridley v. Johnson,* 476 S.W.2d 475, 481 (Mo. banc 1972) (explaining that a witness may be asked whether they agree or disagree with a statement from a text). Martin presented no testimony that the deviations from the NTHSA protocol would affect the reliability of his observations and conclusions. Nor was there any evidence that would support the conclusion reached by the trial court that NTHSA approval for an alphabet or counting test was required for its validity. Nor was there any objection by Martin that these field sobriety tests were inadmissible because they lacked a scientific basis. In fact, numerous cases have said that no foundation is necessary for such field sobriety tests. *Eggleston v. Dir. of Revenue,* 954 S.W.2d 696, 697 (Mo.App. W.D.1997); *Nuyt v. Dir. of Revenue,* 814 S.W.2d 690, 692 (Mo.App. E.D.1991).

Even without the challenged field sobriety tests, the uncontroverted evidence was that: (1) Martin crossed the centerline several times and drove for some time in the turn lane, (2) stated that she was the "DWI," then laughed and said she was the designated driver, (3) admitted she had a couple of beers, (4) had glassy eyes, (5) had difficulty following directions and swayed during the field tests, and (6) failed the finger—to—nose test.

Martin argues that in the face of contested evidence we must defer to the trial court's assessment, particularly as to findings of credibility. But the trial court made no finding of the officer's lack of credibility as the trial court did in *York v. Director of Revenue,* 186 S.W.3d 267 (Mo. banc 2006). Nor was all of the evidence presented by the officer controverted or contested as in *Hinnah v. Dir. of Revenue,* 77 S.W.3d 616 (Mo. banc 2002). Under our standard of review, the trial court may not simply disregard, particularly in the absence of a credibility finding, the uncon-

troverted evidence. *Brown v. Dir. of Revenue,* 85 S.W.3d 1, 7 (Mo. banc 2002). Nor does *Guhr v. Dir. of Revenue,* 228 S.W.3d 581 (Mo. banc 2007), compel a different result. Although the trial court has the right to disbelieve even uncontradicted evidence, it does not have the right to disregard it, without an express finding of incredibility. *See Brown,* 85 S.W.3d at 7.

The trial court's judgment was not supported by substantial evidence, was against the weight of the evidence, and incorrectly declared and applied the law. The judgment is reversed and remanded with directions to enter judgment in favor of DOR.

HAROLD L. LOWENSTEIN, Judge, and THOMAS H. NEWTON, Judge, concur.