Marjorie RUGG, Petitioner/Respondent,

v.

**DIRECTOR OF REVENUE, State of Missouri, Defendant/Appellant.**

**No. ED 90855.**

Missouri Court of Appeals, Eastern District, Division Four.

Nov. 18, 2008.

---

Nicole L. Loethan, Associate Solicitor, Jefferson City, MO, for appellant.

Carl M. Ward, Jason A. Korner, Washington, MO, for respondent.

KATHIANNE KNAUP CRANE, Judge.

The Director of Revenue (Director) appeals from the trial court's judgment reinstating the driving privileges of petitioner, Marjorie Rugg, after Director suspended them pursuant to section 302.505 RSMo (2000).[1] The trial court found that Director's evidence failed to show that the arresting officer had probable cause to arrest petitioner for driving while intoxicated and that petitioner did not have a blood alcohol concentration (BAC) of .08%. We reverse and remand with directions.

Around 2:30 a.m. on August 31, 2006, Officer S. Dwiggins began following petitioner on Wildhorse Creek Road. While following the vehicle, Officer Dwiggins observed petitioner's vehicle cross the center line eight times and the shoulder line twice. She also observed petitioner's vehicle weave within its lane. After following the vehicle for approximately two miles, Officer Dwiggins activated her emergency equipment and stopped the vehicle.

Officer Dwiggins informed the petitioner of the reason for the stop. Petitioner re-

---

1. All further statutory references are to RSMo (2000), unless otherwise indicated.

sponded, "I always drive like that." The officer then requested petitioner's driver's license. Petitioner began looking through the glove compartment of the vehicle. Officer Dwiggins repeated her requests to see petitioner's driver's license. Petitioner again looked through her glove compartment and kept saying, "You want my insurance card." Officer Dwiggins could smell a faint odor of an alcoholic beverage while she was speaking to petitioner. Petitioner finally began to look through her purse and then informed Officer Dwiggins that she did not have her license with her. Officer Dwiggins instructed petitioner to pull her vehicle into a nearby parking lot.

During further conversation with petitioner, Officer Dwiggins observed that petitioner's speech was slurred and her eyes were glassy and very bloodshot. Officer Dwiggins asked petitioner if she had been drinking, and petitioner responded, "No." However, after Officer Dwiggins asked petitioner if she would submit to field sobriety testing, petitioner informed Officer Dwiggins that she had had a drink around 5:00 p.m. Petitioner then exited her vehicle to conduct the field sobriety tests. While doing so, she placed her left hand on her vehicle to steady herself.

Once petitioner was outside, Officer Dwiggins administered three field sobriety tests: the horizontal gaze nystagmus (HGN) test; the walk-and-turn test; and the one-leg stand test. The trial court excluded the results of the HGN from evidence, and petitioner testified, contrary to Officer Dwiggins' report, that she walked "fine" during the walk and turn test and that she kept her arms at her sides and did not put her foot down during the one-leg stand test. After finishing the field sobriety tests, Officer Dwiggins administered a preliminary breath test to petitioner, which was positive for alcohol.

At that time, Officer Dwiggins informed petitioner that she was under arrest for driving while intoxicated and transported petitioner to the police station. At the station, Officer Dwiggins read the Missouri Implied Consent law and the *Miranda* warnings to petitioner. Petitioner stated that she understood both and agreed to submit to a breathalyzer test. After observing petitioner for a period of fifteen minutes, Officer Dwiggins administered the breath test using an Intoxilyzer 5000, which revealed a BAC of .132%. Officer Dwiggins then issued a summons to petitioner for driving while intoxicated.

Upon receiving notice that Director would suspend or revoke her driver's license for operating a motor vehicle while intoxicated, petitioner filed a petition for a trial *de novo* with the circuit court. At the trial *de novo*, Director offered into evidence certified copies of the Alcohol Influence Report, Officer Dwiggins' narrative, the chemical breath test records, and the maintenance records for the machine used. The trial court found that Officer Dwiggins did not have probable cause to arrest petitioner on August 31, 2006 and that petitioner did not have a BAC of .08% or more. It did not make any other findings, including any credibility findings. It ordered that petitioner's driving privileges be reinstated and ordered the suspension of petitioner's license be removed from her record. Director appeals.

## DISCUSSION

On appeal from a trial court's judgment reinstating an individual's driving privileges, we will affirm the judgment unless there is no substantial evidence to support the decision, it is against the weight of the evidence, or it erroneously declares or applies the law. *Vanderpool v. Director of Revenue*, 226 S.W.3d 108, 109 (Mo. banc 2007); *Murphy v. Carron*, 536 S.W.2d 30,

32 (Mo. banc 1976). If the facts of the case are contested, we defer to the trial court's factual determinations. *Guhr v. Director of Revenue*, 228 S.W.3d 581, 585 n. 3 (Mo. banc 2007). However, when the evidence is not contested, and the real issue is the legal effect of the evidence, we do not defer to the trial court's judgment. *Id.*

### I. *Probable Cause*

■ For its first point, Director asserts that the trial court erred in finding that there was no probable cause to arrest petitioner for driving while intoxicated, because the substantial undisputed evidence constituted probable cause, and the trial court was not allowed to disregard this evidence in the absence of a negative credibility finding. We agree.

■ In order to establish a *prima facie* case for suspension of a driver's license for driving while intoxicated under section 302.505, the director must introduce evidence showing (1) that the driver was arrested upon probable cause for driving while intoxicated, and (2) that the driver had a blood alcohol content (BAC) of at least .08%. *Vanderpool*, 226 S.W.3d at 109.

> "Probable cause to arrest exists when the arresting officer's knowledge of the particular facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has committed an offense.... There is no precise test for determining whether probable cause exists; rather it is based on the particular facts and circumstances of the individual case."

*Guhr*, 228 S.W.3d at 584–85 (quoting *Hinnah v. Director of Revenue*, 77 S.W.3d 616,

621 (Mo. banc 2002)). The level of proof necessary to show probable cause is "substantially less than that required to establish guilt beyond a reasonable doubt." *Brown v. Director of Revenue*, 85 S.W.3d 1, 4 (Mo. banc 2002). In determining whether probable cause existed at the time of arrest, "[t]he trial court must assess the facts 'by viewing the situation as it would have appeared to a prudent, cautious, and trained police officer.'" *Id.* (quoting *Cox v. Director of Revenue, State of Mo.*, 37 S.W.3d 304, 307 (Mo.App.2000)). This is an objective standard. *Guhr*, 228 S.W.3d at 585.

One situation in which courts have found that probable cause is met under this standard in suspension and revocation cases occurs when the arresting officer "'observes an unusual or illegal operation of a motor vehicle and observes indicia of intoxication upon coming into contact with the motorist.'" *Guhr*, 228 S.W.3d at 585 n. 2 (quoting *Brown*, 85 S.W.3d at 4).[2]

In this case, the evidence that petitioner had been crossing the center and shoulder lines of the road was not controverted. This was sufficient to indicate an unusual or illegal operation of her motor vehicle to a prudent officer. *See Martin v. Director of Revenue*, 248 S.W.3d 685, 689 (Mo.App. 2008).

There was also sufficient uncontroverted evidence of indicia of intoxication to show probable cause. Petitioner exhibited confusion in response to the request for her license, an odor of alcohol, glassy and bloodshot eyes, and slurred speech. *See Little v. Vincent*, 248 S.W.3d 714, 718 (Mo. App.2008); *Brown v. Director of Revenue*, 164 S.W.3d 121, 126 (Mo.App.2005) . Peti-

---

**2.** *Guhr* emphasizes that this statement is not a modification of the general probable cause standard. *Guhr*, 228 S.W.3d at 585 n. 2. Further, it is not a mandatory formula, and probable cause may also be established from

sufficient indicia of intoxication even if the arresting officer has not seen the driver engage in erratic driving. *Gelsheimer v. Director of Revenue*, 845 S.W.2d 107, 108–09 (Mo.App.1993).

tioner admitted having had a drink earlier in the day, another factor the officer could consider. *See Soest v. Director of Revenue,* 62 S.W.3d 619, 621 (Mo.App.2001). Finally, petitioner's preliminary breath test was positive for the presence of alcohol. The results of a Portable Blood Test are admissible as evidence of probable cause to arrest. Section 577.021.

The officer's possession of all of this information was sufficient to warrant a prudent, cautious, and well-trained officer to believe that petitioner had committed the offense of driving while intoxicated, even without the results of the field sobriety tests which had been controverted. *See Brown,* 85 S.W.3d at 6–7; *Martin,* 248 S.W.3d at 689; *Little,* 248 S.W.3d at 718–19.

Petitioner responds that statements in Officer Dwiggins' report were contradictory and should be disregarded because they undermined the credibility of the evidence. The cases on which petitioner relies to support this argument address a different situation. Two are refusal cases in which an officer made conflicting statements about whether the driver had in fact refused a breath test. Because no additional evidence was provided to resolve the conflict on this element of the director's case, the respective courts held that refusal was not established. *See Richardson v. Director of Revenue,* 165 S.W.3d 236, 241 (Mo.App.2005); *Reece v. Director of Revenue, State of Mo.,* 61 S.W.3d 288, 292 (Mo.App.2001). The third case, *Howdeshell v. Director of Revenue,* 184 S.W.3d 193, 199 (Mo.App.2006), did not involve a contradictory report. It merely commented that "[i]n rare instances, a trial court can be required to decide a legitimate factual dispute that arises because the documentary evidence presented by the Director is internally inconsistent," citing *Richardson* and *Reece.* The final case,

*Zummo v. Director of Revenue,* 212 S.W.3d 236, 242–43 (Mo.App.2007), also identified *Reece* and *Richardson* as examples of rare cases in which an internal inconsistency in a report created a legitimate credibility dispute with respect to a material aspect of the director's case. However, it held that an inconsistency in a report on an issue not relevant to probable cause did not create a legitimate credibility issue on a material matter for a trial court to resolve and did not require an appellate court to defer to the trial court. *Zummo,* 212 S.W.3d at 243.

 In contrast to *Reece* and *Richardson,* in this case petitioner does not point to any instances in which Officer Dwiggins made statements in the report that contradicted each other. Rather, she offers reasons why Officer Dwiggins' observations should not be believed. However, the trial court did not find Officer Dwiggins' statements to be incredible, and we may not affirm on the presumption that it did so. A trial court has the right to disbelieve any evidence, even if uncontradicted, but it does not have the right to disregard uncontroverted competent evidence without an express finding of incredibility. *Brown,* 85 S.W.3d at 7; *Martin,* 248 S.W.3d at 689. " '[W]hen the evidence supporting revocation is uncontroverted and the trial court has not specifically found the director's witness incredible, appellate courts will not presume that the trial judge found a lack of credibility and will not affirm on that basis.' " *Brown,* 85 S.W.3d at 7 (quoting *Mathews v. Director of Revenue,* 8 S.W.3d 237, 238 (Mo.App. 1999)).

Petitioner next responds that the trial court could have given great weight to petitioner's testimony that she performed well on the field sobriety tests and little weight to Officer Dwiggins' observations. She points out that Officer Dwiggins did

not immediately notice her slurred speech and glassy, blood shot eyes and that her erratic driving could be explained by Officer Dwiggins following her too closely. The sequence in which the officer made . her observations of petitioner's indicia of intoxication is not significant on appeal because the trial court did not find the officer incredible. In addition, petitioner's excuse for her driving does not detract from the probable cause analysis. *Martin,* 248 S.W.3d at 688. This is because the issue is not whether she was in fact intoxicated, but how the available facts would have appeared to a cautious, trained and prudent officer. *See Soest,* 62 S.W.3d at 622.

"The probable cause analysis requires consideration of *all* the information in the officer's possession prior to arrest." *Guhr,* 228 S.W.3d at 585 (emphasis added). "All" information includes information that, standing alone, may not constitute probable cause. *Guhr,* 228 S.W.3d at 585. Neither the trial court nor the appellate court is "permitted to disregard the uncontroverted elements of the Director's *prima facie* case." *Zummo,* 212 S.W.3d at 244. Accordingly, in determining if an officer has probable cause to believe a person was driving while intoxicated, the court must consider all of the undisputed information before the officer.

Petitioner last argues that this court should defer to the trial court's finding of no probable cause, citing *York v. Director of Revenue,* 186 S.W.3d 267 (Mo. banc 2006) and *Hinnah v. Dir. of Revenue,* 77 S.W.3d 616 (Mo. banc 2002). Neither of these cases supports petitioner's position. In *Hinnah,* the officer's testimony on direct examination was controverted on cross-examination. 77 S.W.3d at 621. In *York,* the court deferred to the trial court's determination of the trooper's lack of credibility.[3] 186 S.W.3d at 269, 272. *See Martin,* 248 S.W.3d at 689; *Zummo,* 212 S.W.3d at 243.

In this case, the trial court did not find any evidence to not be credible. Setting aside the controverted results of the field sobriety tests, the remaining uncontested facts and circumstances within Officer Dwiggins' knowledge were sufficient to warrant a prudent officer's belief that petitioner had committed the offense of driving while intoxicated. The applicable standard of review does not permit us to affirm the judgment by disregarding the uncontested evidence that supports Director's determination that all elements for an administrative revocation of driving privileges were proven. *Brown,* 85 S.W.3d at 7.

The trial court misapplied the law in finding that the officer did not have probable cause. Point one is granted.

II. *Blood Alcohol Content*

For its second point, Director claims that the trial court erred in finding that petitioner's blood alcohol content (BAC) was not .08% or more. In her brief, petitioner concedes that Director satisfied his burden of proving that petitioner was driving with a BAC at or above the legal limit of .08%. Point two is granted.

*Conclusion*

We reverse and remand the cause to the trial court with directions to enter a judgment reinstating the suspension of petitioner's driving privileges.

BOOKER T. SHAW, P.J. and MARY K. HOFF, J., concur.

---

3. The Missouri Supreme Court has clarified that *York* should not be read to adopt a subjective test in assessing probable cause. *Guhr,* 228 S.W.3d at 585 n. 3.