MARK D. PFEIFFER, Presiding Judge.
The conceded facts in this case are virtually identical to the conceded facts in Hollon v. Director of Revenue, 277 S.W.3d 734 (Mo.App. W.D.2008), another case in which the trial court found no probable cause to exist for a DWI arrest. Because there were sufficient conceded facts regarding probable cause, we reversed the trial court in Hollon. I respectfully submit that we must do the same today. Thus, I respectfully dissent.
On the evening of June 22, 2012, Kathryn Avent (“Avent”) was 20 years old, had been drinking excessively,[1] and was *259 driving her Mercedes Benz vehicle far in excess of the posted speed limit[2] on “back roads” with her friends. She smelled of alcohol,[3] admitted consumption of alcohol,[4] *260 tested positive for the presence of alcohol on a portable breath test (“PBT”),[5] her eyes were glassy and watery,[6] and she exhibited six out of six clues of impairment on the horizontal gaze nystagmus (“HGN”) test.[7]
Apparently, however, at this young age, Avent was a rather highly functioning person with a BAC of .150%. Upon Corporal Owens activating his emergency lights and initiating a traffic stop, Avent pulled her vehicle over in a controlled, reasonable fashion; Avent did not appear confused or incoherent and she communicated clearly to Corporal Owens without stuttering, mumbling, or slurring of speech; Avent was not combative and she was not hiccup-ping or belching; Avent performed satisfactorily on the walk-and-turn test and the one-leg stand test.
At trial,[8] these facts constituted the two “poster lists” of “probable cause” evidence that Avent’s counsel placed before the trial court. These facts were not contested. In fact, Avent’s counsel actually conceded these facts before the trial court, in appellate briefing to this court, and in oral argument to this court. Though the majority opinion casts these facts as “contested,” the majority opinion is, frankly, ignoring Avent’s concessions in doing so.[9] The *261 majority opinion is ignoring the “compare the two poster lists” argument that was actually made by Avent. And, the reason is simple:
“[W]here the facts are contested, deference is given to the trial court’s assessment of the evidence and credibility of the witnesses.” Velluto v. Dir. of Revenue, 388 S.W.3d 14, 17 (Mo.App. E.D.2012) (citing White v. Dir. of Revenue, 321 S.W.3d 298, 307-08 (Mo. banc 2010)). However, “[i]f the evidence is uncontested or admitted so that the real issue is a legal one, then there is no need to defer to the trial court’s [ruling].” Id. Though there are numerous scenarios in which evidence is to be deemed “uncontested,” relevant to this appeal, evidence is “uncontested when a party has admitted in its pleadings, by counsel, or through the [party’s] individual testimony the basic facts of [the other party’s] case. In such cases, the issue is legal, and there is no finding of fact to which to defer.” White, 321 S.W.3d at 308 (internal citations omitted).
Thus, the majority opinion attempts to brand this as a case where the trial court is weighing the evidence as opposed to the law. The difference is one with a significant distinction — one that is ignored by the majority opinion.
Conceded Facts
At oral argument, Avent’s counsel conceded that, prior to her arrest, Avent was speeding; there was alcohol on her breath; she admitted to alcohol consumption (even though she was not of legal age to consume alcohol); there is “no dispute” that she had glassy and watery eyes; and there was a positive result for the presence of alcohol with the PBT. Likewise, in her appellate briefing to this court, Avent’s counsel acknowledged that his client did not perform well on the HGN test. In the face of these conceded facts, Avent’s counsel makes the following argument (at oral argument) that the majority opinion ignores:
What’s critical about this case is all the other evidence. The State has disregarded all of the evidence that is favorable to the judgment. We haven’t even heard it. I mean, my client stops appropriately, picks the right location. She has all these facts. Walk and turn; one leg stand test. These are incredibly complicated tests, but it’s not just those my client passed. All of the indications that an officer looks for from the way they stop the vehicle, the way they get out of the vehicle, the way they talk, I mean, her speech isn’t slurred, her eyes aren’t bloodshot. We made a list, a poster listing indications of intoxication, indications that my client’s not intoxicated, and it wasn’t even close. The amount of information provided by this officer would tend to indicate my client was not intoxicated. And I think it was rather overwhelming. Those items are listed in the briefs. So I think at some point just because there’s some evidence that my client consumed alcohol, when you look at the *262 totality of the circumstances here, the indications are that my client’s not intoxicated.
(Emphasis added.)
Avent’s argument is similarly expressed in appellate briefing to this court. For example, Avent’s appellate briefing states:
[Avent] acknowledges that in certain circumstances observation of eyes and breath, and 4 or more clues on the HGN test can establish probable cause for driving while intoxicated especially when an actual driving error or inability to control a motor vehicle exists (or some other type of impairment exists). However, when additional field sobriety tests are given and passed, and additional observations tend to indicate that the person is not intoxicated, at some point the totality of the circumstances indicate that the person is not intoxicated, negating probable cause for arrest for DWI. [Avent] asserts such is the case here.
The critical focus of Avent’s argument to the trial court and to this court is that Avent concedes that there was evidence of Avent’s intoxication. But, in her “poster list” presentation, Avent submits that there are more pieces of evidence pointing away from intoxication. Hence, she has argued steadfastly, this “my list is better than your list” argument must carry the day. However, Avent’s “list” argument, which the trial court accepted, is not the law.
Irrespective, the facts are conceded. Application of the law to these conceded “poster lists” oí facts to determine whether probable cause exists to arrest Avent for DWI is a question that we answer without deference to the trial court’s suppression ruling. The majority opinion, however, has ignored the procedural posture of this case.
Standard of Review
“Probable cause is a legal question that we review without deference to the trial court’s [ruling].” Vellwto, 383 S.W.3d at 18. “[Although we review the circuit court’s conclusions as to the historical facts under a clearly erroneous standard, the issue of whether or not the Fourth Amendment has been violated is an issue of law that we review de novo.” State v. Robertson, 328 S.W.3d 745, 750 (Mo.App. W.D.2010). Once a party has admitted the basic facts, “the issue is legal, and there is no finding of fact to which to defer.” White, 321 S.W.3d at 308.
In Ornelas v. United States, the Supreme Court held that “determinations of ... probable cause should be reviewed de novo on appeal.” 517 U.S. 690, 699,116 S.Ct. 1657,134 L.Ed.2d 911 (1996). The de novo review is an independent review and the Court has never “expressly deferred to the trial court’s determination.” Id. at 697, 116 S.Ct. 1657.... The trial court’s probable cause determination is reviewed by establishing the facts and applying the law to those facts: ... “The historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the [relevant] statutory [or constitutional] standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.” Id. at 696-97, 116 S.Ct. 1657 (quoting Pullman-Standard v. Swint, 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982)).
White, 321 S.W.3d at 310.
In other words, this is not a review of a suppression ruling in which the historical facts leading to Avent’s arrest are in dispute. Appellate review of a trial court’s historical factual findings are reviewed on a clearly erroneous standard. But, here, the historical facts are conceded; hence, *263 our review is an application of the law of probable cause to the conceded historical facts — de novo review.
Probable Cause
The law of probable cause in the context of a DWI arrest has been succinctly described by our Supreme Court as follows:
Although section 577.041 states that the arresting officer must have “reasonable grounds” to believe the person was driving while intoxicated, “reasonable grounds” is virtually synonymous with probable cause. Guhr v. Dir. of Revenue, 228 S.W.8d 581, 584 (Mo. banc 2007) (quoting Hinnah v. Dir. of Revenue, 77 S.W.3d 616, 620 (Mo. banc 2002)). As a result, this Court has cited to section 577.041 cases interchangeably with section 302.535 cases when discussing the issues related to probable cause.... ” See Brown v. Dir. of Revenue, 85 S.W.3d 1, 4 n. 4 (Mo. banc 2002).
White, 321 S.W.3d at 305 n. 6.
[P]robable cause will exist when a police officer observes an unusual or illegal operation of a motor vehicle and observes indicia of intoxication upon coming into contact with the motorist. Probable cause ... will exist when the surrounding facts and circumstances demonstrate to the senses of a reasonably prudent person that a particular offense has been or is being committed. The level of proof necessary to show probable cause ... is substantially less than that required to establish guilt beyond a reasonable doubt. There is a vast gulf between the quantum of information necessary to establish probable cause and the quantum of evidence required to prove guilt beyond a reasonable doubt. The trial court must assess the facts by viewing the situation as it would have appeared to a prudent, cautious, and trained police officer.
Brown v. Dir. of Revenue, 85 S.W.3d 1, 4 (Mo. banc 2002) (numerous internal citations & quotations omitted) (emphasis added).
Of note, our Supreme Court’s declaration of the law of probable cause in a DWI setting is conspicuously silent about the notion that the “observations of indicia of intoxication” must somehow be greater than the “list” of indicia that the driver may not be intoxicated. Instead, our Supreme Court declares that the arresting officer must observe “unusual or illegal operation of a motor vehicle and observes indicia of intoxication.” I respectfully submit that the rationale for this principle of law is, as our Supreme Court has stated: that “there is a vast gulf between the quantum of information necessary to establish probable cause and the quantum of evidence required to prove guilt beyond a reasonable doubt.”[10] It follows:
Proof of probable cause need only meet the preponderance of the evidence standard. This merely requires that the evidence, taken as a whole, is sufficient to show the fact to be proven is more *264 likely than not. The level of proof necessary to show probable cause for suspension or revocation of a driver’s license is “substantially less” than that required to establish guilt beyond a reasonable doubt.
Hager v. Dir. of Revenue, 284 S.W.Sd 192, 197 (Mo.App. S.D.2009) (citations omitted).
“Whether the driver is under the influence of alcohol or any other substance is irrelevant. The relevant inquiry is whether or not the arresting officer had reasonable grounds for believing that the arrested person was driving while in either an intoxicated or drugged condition.” Johnson v. Dir. of Revenue, 168 S.W.3d 139, 141 (Mo.App. W.D.2005).
The Law of Probable Cause Applied to the Conceded Facts
In Hollon v. Director of Revenue, the court noted that:
Hollon concedes that he was speeding, that he told the officer that he had consumed a couple of drinks, that he had alcohol on his breath, and that his eyes were glassy and watery. These facts were sufficient for Corporal Angle to suspect that Hollon may have been driving while intoxicated and justified his decision to administer a portable breath test as authorized by § 577.021 [the results of which indicated that Hollon’s blood alcohol level was over the legal limit].[11]
277 S.W.3d 734, 736 (Mo.App. W.D.2008) (emphasis added). The majority opinion spends a considerable amount of word space attempting to avoid the holding of Hollon, as the holding in Hollon is at odds with the majority opinion’s ruling today. Principally, the majority opinion professes to avoid the holding in Hollon by suggesting that because Hollon was pre-White, it would not have applied the correct deferential review of the evidence. But, as the majority opinion must concede, the salient facts of Hollon were conceded; they were not the product of some sort of pre-White deference (or lack thereof) standard. As such, Hollon’s application of the law of probable cause to the facts constitutes binding precedent on the probable cause analysis in the present case. Ultimately, the conceded facts and results of the PBT led the Hollon court to conclude:
When the portable breath test results in this case are considered in conjunction with the alcohol on [defendant’s] breath, his admission that he had been drinking, and his glassy and watery eyes, a cautious, trained, and prudent officer would believe he had reasonable grounds to arrest [the defendant]. See Peters v. Director of Revenue, 35 S.W.3d 891, 896-97 (Mo.App. S.D.2001) (holding probable cause to arrest established where driver was pulled over for speeding, smelled moderately of alcohol, admitted consuming some beer, had glassy eyes, and failed one field sobriety test); see also Flaiz v. Director of Revenue, 182 S.W.3d 244, 248-49 (Mo.App. W.D.2005).
Hollon, 277 S.W.3d at 738 (emphasis added).
In Flaiz, we again reiterated that in analyzing the threshold conclusion by an officer that probable cause existed for arresting an individual for DWI, the issue *265 “ ‘is whether the officer had reasonable grounds to believe [d]river was intoxicated, not whether [he] was actually intoxicated.’ ” 182 S.W.3d at 248 (quoting McCarthy v. Dir. of Revenue, 120 S.W.3d 760, 763 (Mo.App. E.D.2003)). See also Martin v. Dir. of Revenue, 248 S.W.3d 685, 688 (Mo.App. W.D.2008).
Here, Corporal Owens lawfully stopped Avent’s vehicle because she was speeding. Thereafter, Corporal Owens observed a strong odor of alcohol coming from Avent’s breath; Avent, though 20 years old at the time of the traffic stop, admitted she had been drinking; Avent’s eyes were watery and glassy; Avent failed one field sobriety test; and the results of the PBT were positive for the presence of alcohol. Corporal Owens explained his basis for probable cause to arrest Avent as follows:
Just due to the totality of the circumstances, all my observations, [Avent] had watery, glassy eyes, a very strong odor of alcohol that was coming from her breath that became stronger as she spoke, the clues that I detected during the horizontal gaze nystagmus, her admission to consuming alcohol, high rate of speed, I mean, almost double the speed limit, and just based on all my observations, I placed her under arrest for DWI.
While it is also undisputed that Avent satisfactorily performed two other field sobriety tests, and her speech, demeanor, and ability to ambulate were all consistent with a person who was not intoxicated, the officer’s probable cause determination leading to Avent’s arrest only required the officer to have reasonable grounds to believe that Avent was intoxicated — not that she was actually intoxicated. Under the conceded factual circumstances of this case, much like Hollon, “a cautious, trained, and prudent officer would believe he had reasonable grounds to arrest [Avent]” for suspicion of driving while intoxicated. Hollon, 277 S.W.3d at 738.
And, it turns out, there is good reason for this rule of law: Avent, a 20-year-old under-aged driver with a BAC of .150%, was not just slightly intoxicated — her BAC was almost twice the legal limit. As it turns out, Corporal Owens’s prudence, caution, and training as a police officer led him to the reasonable conclusion of believing Avent was intoxicated. As a matter of law applied to the conceded facts, Corporal Owens had probable cause to arrest Avent for DWI.
I would reverse.

. Section 577.012.1 defines excessive blood alcohol content as eight hundredths (.08%) of one percent or more by weight of alcohol in a person’s blood. Avent’s blood alcohol content was ultimately recorded by a Breathalyzer DataMaster machine at .150%. As I explain in footnote 8, the trial court agreed with the parties to take the motion to suppress ’’with the case” and the parties proceeded with the trial. This case illustrates why the record becomes so confusing upon doing so and illustrates why the statute (§ 542.296.3) and rule (Rule 24.05) authorizing motions to suppress anticipate the general rule that these motions should be ruled upon before trial. Here, at trial, the following colloquy occurred upon the State’s introduction of the BAC evidence at trial:
[THE STATE]: Your Honor, at this time the State would move to enter into evidence State’s Exhibit 3, ... Trooper Owens' Type 3 permit, and State’s Exhibit 4, the Data-Master evidence ticket [reflecting .150% BAC],
[AVENT’S COUNSEL]: No objection.
THE COURT: To either? Do you have no objection to either?
[AVENT’S COUNSEL]: No.
THE COURT: Okay.
[AVENT’S COUNSEL]: I have no objection.
THE COURT: All right. Then the Court receives State's Exhibits 3 and 4.
*259 This is wholly illogical. Stating “no objection” to post-arrest evidence when post-arrest evidence is the subject of the defendant’s pending motion to suppress is contradictory. Further, there is no separate colloquy on the record confirming that Avent was stipulating to the admission of this post-arrest evidence subject to Avent's motion to suppress. At minimum, this is a sloppy record. At worst (for the defendant), this colloquy could be deemed a waiver to objection to the subject evidence. We have warned about this exact issue in the past:
Counsel ran some risk of being considered on appeal to have waived objection to the evidence. The only sure way to avoid that risk is to either (1) have the judge specifically recite for the record that the objection is preserved throughout; or (2) respectfully demand a ruling on the pre-trial motion before trial; and then, throughout the trial, as necessary, reiterate the objection, so that the court may reconsider at each stage of the proceeding.
State v. Apel, 156 S.W.3d 461, 466 n. 1 (Mo. App. W.D.2005). In Apel, it was the trial court that announced its intention to take the motion to suppress with the case and, as such, one can understand why we chose not to penalize the defendant for the trial court’s refusal to rule the motion to suppress before trial (a practice we have discouraged). Here, the trial court noted on the record that, "I’ve never done this.” I respectfully submit that it should not be done even where, as here, the parties requested that the trial court do so. Otherwise, the exception to use discretion to consider a motion to suppress during trial will swallow the general rule that these matters are intended to be resolved before trial. That said, the conduct of the parties on appeal, including the State, is that the objection to this evidence via motion to suppress has not been waived and both the majority opinion and I have treated it accordingly.

.Corporal Owens testified that Avent was driving almost twice the posted speed limit. Avent does not contest the officer’s investigatory stop of Avent, stating at the oral argument that, "we have no issue with the stop. The stop’s legal. [Avent] was speeding.” See State v. Garriott, 151 S.W.3d 403, 408 (Mo.App. W.D.2004) ("A traffic stop is justified if [it is] based on the violation of traffic laws.”).

. "The odor of alcohol is one of the classic indicia of intoxication.” Flaiz v. Dir. of Revenue, 182 S.W.3d 244, 249 (Mo.App. W.D.2005).

. Upon Avent’s admission to her age (20) and consumption of alcohol, there were any number of alcohol related offenses related to minors that Corporal Owens could have arrested Avent for with no additional information. See § 544.216 (Any law enforcement officer "may arrest on view, and without a warrant, any person ... such officer has reasonable grounds to believe has violated any law of this state, including a misdemeanor or infraction.”). Further, our United States Supreme Court has indicated that the stated basis for the officer's arrest (here, DWI) does not exclusively frame the analysis for reviewing an officer’s probable cause determination to arrest a person, to the extent that there may be other bases upon which the officer may have arrested the person. Specifically, the United States Supreme Court has declared:
[A]n arresting officer’s state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause. As we have repeatedly explained, the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer’s action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action. The Fourth Amendment's concern with "reasonableness” allows certain actions to be taken in certain circumstances, whatever the subjective intent.
[[Image here]]
While it is assuredly good police practice to inform a person of the reason for his arrest at the time he is taken into custody, we have never held that to be constitutionally required.
Devenpeck v. Alford, 543 U.S. 146, 153-55, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) (emphasis added) (numerous internal citations & quotations omitted). However, unlike Deven-peck, this issue was not raised with the trial court (even though Avent was also charged *260 with possession of intoxicating liquor by a minor in violation of section 311.325); hence, it cannot serve as a basis for reversal at this juncture of the case. State v. Ramires, 152 S.W.3d 385, 397 (Mo.App. W.D.2004).

. While not admissible as evidence of BAC, a PBT is admissible as evidence of probable cause to arrest. § 577.021.3.

. See Flaiz, 182 S.W.3d at 249 (watery eyes are an indicator of intoxication).

. This test examines a subject's eye movements for an involuntary jerking, or nystag-mus, which, when the test is performed properly (Avent has not challenged Corporal Owens’s administration of the HGN test), can be an indicator of intoxication. State v. Stone, 280 S.W.3d 111, 114 (Mo.App. E.D. 2009).

. The majority opinion refers to the trial as an ' evidentiary hearing. It was, in fact, the entire trial, including closing arguments. At the request of the parties, the trial court reluctantly took the motion to suppress "with the case,” even mentioning that the court was concerned about jeopardy implications. Yet, the trial court did not rule on the motion to suppress before trial or even during trial; instead, the trial court ruled on the motion to suppress after trial. Time and time again, we have discouraged the practice of taking a motion to suppress "with the case.” See State v. Ingram, 341 S.W.3d 800, 803 & n. 1 (Mo.App. E.D.2011); State v. Apel, 156 S.W.3d 461, 465-66, 466 n. 1 (Mo.App. W.D.2005); State v. Rains, 537 S.W.2d 219, 223 n. 1 (Mo.App.1976). The State would do well to review this court’s relatively recent opinion in State v. Connell, 326 S.W.3d 865 (Mo.App. W.D. 2010), as the trial court’s perceived concerns about this backwards process of ruling the motion to suppress after trial is a valid concern. In Connell, under remarkably similar procedural circumstances, we concluded that the trial court's suppression ruling after trial (granting the motion) amounted to a judgment of acquittal, and we dismissed the appeal for lack of jurisdiction, effectively depriving the State of interlocutory review of the suppression ruling. Although the record is clear that the parties did not intend such a result and neither the majority opinion nor I have recommended dismissal, this "take the motion with the case” procedural process is not one without risk. This court’s jurisdiction is statutory, not subject to stipulation by parties. I join the litany of case precedent in discouraging this procedural process for obtaining a ruling on a motion to suppress "taken with the case” after trial.

.At oral argument: (1) Avent’s counsel conceded that "there was ... a positive result for the portable breath test.” (2) Avent’s counsel conceded that "there was ... alcohol on [Avent’s] breath.” (3) When asked if Avent admitted, though only 20 years old, she had been drinking before deciding to drive her vehicle, Avent’s counsel succinctly conceded, "Yes.” (4) When asked if there was any dispute as to whether or not she had glassy and watery eyes, Avent’s counsel conceded, "No *261 dispute.” The context of these concessions was not, as the majority suggests, an alternative argument. Plainly and simply, these facts were conceded. And, as explained more fully in this dissent, this was consistent with the actual “poster list” argument that was actually made to the trial court, was actually made in Avent’s appellate briefing, and was actually made at oral argument. The only thing inconsistent with Avent's argument is the majority opinion’s characterization of it. Frankly, this is the distinguishing issue between the majority opinion and my dissent. I simply am not willing to apply an inapplicable standard of review to “ignore contrary evidence” when that contrary evidence is conceded, particularly where our Supreme Court has instructed us to do just the opposite. White v. Dir. of Revenue, 321 S.W.3d 298, 308 (Mo. banc 2010).

. For example, see Denton v. Director of Revenue, 172 S.W.3d 909, 911-12 (Mo.App. S.D.2005), where probable cause was found to exist where the defendant undisputedly committed driver error, admitted alcohol consumption, smelled of alcohol, and had bloodshot and glassy eyes, but had also successfully performed every field sobriety test that was administered by the arresting officer. The majority opinion attempts to distinguish Den-ton by stating that the relevant BAC level was .02% instead of .08%. With all due respect, I am not convinced that this is a distinction with much difference at all. Like the driver in Denton, Avent was under the legal age for lawful consumption of alcohol, conceded commission of driving error, conceded alcohol consumption and the corresponding smell of alcohol, and conceded glassy eyes; yet, like the under-aged driver in Denton, she performed fairly well with those acts requiring physical acuity.

. It is also conceded in Hollon that Hollon failed two field sobriety tests and passed two others; but, since it was determined by the trial court that Corporal Angle had failed to properly administer the field sobriety tests, the results of those tests were ignored by this court in its appellate opinion. Hollon, 277 S.W.3d at 735. The Hollon court did, however, note that field sobriety testing merely serves to supplement an officer's overall conclusions regarding probable cause “field” analysis by the officer. Id. at 738.