

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD76395 |
| | ) | |
| KATHRYN AVENT, | ) | Opinion filed: April 1, 2014 |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF JOHNSON COUNTY, MISSOURI**
**The Honorable Sue Dodson, Judge**

Before Division Two: Mark D. Pfeiffer, Presiding Judge,
Joseph M. Ellis, Judge and Victor C. Howard, Judge

The State of Missouri appeals from an order issued in the Circuit Court of Johnson County granting Kathryn Avent's motion to suppress evidence obtained subsequent to her arrest for driving while intoxicated based upon a lack of probable cause to support her arrest. For the following reasons, the trial court's decision is affirmed.

At approximately 7:16 p.m. on June 22, 2012, Corporal Joshua Owens of the Missouri Highway Patrol stopped Avent for speeding on Montserrat Park Road in

Johnson County.[1]  After detecting alcohol on Avent's breath, Corporal Owens questioned Avent and asked her to perform several field sobriety tests including a horizontal gaze nastagmus test ("HGN"), a walk-and-turn test, a one-leg-stand test, and a portable breath test.  At the conclusion of those tests, despite Avent having performed well on the walk-and-turn and one-leg-stand tests, Corporal Owens placed Avent under arrest for driving while intoxicated in violation of § 577.010.  After being taken to the police station, read *Miranda* warnings, and advised of the implied consent law, Avent consented to a chemical test of her breath which indicated that her blood alcohol content was in excess of .08 percent by weight.

After being charged by information with driving while intoxicated, Avent filed a motion to suppress the results of the breathalyzer test and any statements made by her following her arrest, claiming that Corporal Owens lacked probable cause to support his decision to place her under arrest.  After hearing evidence and argument on that motion, the trial court granted Avent's motion and ordered any evidence obtained after her arrest suppressed.[2]

In its sole point on appeal,[3] the State claims that the trial court clearly erred in sustaining Avent's motion to suppress "in that the facts that Defendant had watery and

---

[1] Avent has never challenged the propriety of this traffic stop.

[2] At the parties' request, the trial court took the motion with the case, and the court did not rule on it until after the parties argued the motion following the close of evidence.  It is our observation that the lack of a pre-trial ruling on motions to suppress often unnecessarily complicates matters and can potentially lead to unforeseen and undesirable consequences for the State and/or the defendant.  This Court has expressed concern about the practice previously, and best practice would be to avoid it if possible.  More importantly, however, we strongly discourage the practice of waiting until after the close of evidence to rule on such motions.

[3] Interlocutory appeal of the trial court's ruling on the motion to suppress is authorized by § 547.200.1(3).

glassy eyes, Defendant admitted to consuming four or five beers, Defendant emitted a strong odor of alcohol, Defendant exhibited six out of six clues of intoxication on the horizontal gaze nystagmus test, and Defendant's breath tested positive for alcohol through the portable breath test established probable cause to arrest Defendant for driving while intoxicated."  In making this argument, the State, contrary to our standard of review, disregards the ability of the trial court to make credibility determinations and to weigh the evidence, discounts evidence favorable to Avent, and fails to view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the trial court's ruling.

Where a motion to suppress has been filed by a criminal defendant, "[t]he State has the burden of showing by a preponderance of the evidence that the motion to suppress should be denied."  *State v. Emmett*, 346 S.W.3d 418, 420 (Mo. App. S.D. 2011) (internal quotation omitted).  "This includes both the burden of producing evidence and the risk of non-persuasion."  *Id*. at 419; *see also* *State v. Harris*, 305 S.W.3d 482, 485 (Mo. App. E.D. 2010) ("[T]he State has the burden of production and persuasion to show by a preponderance of the evidence that a defendant's motion to suppress should be overruled.").  "Probable cause exists where the facts and circumstances within the police officers' knowledge, and of which they have reliable and trustworthy information, would warrant a person of reasonable caution to believe that the person being arrested had committed the offense."  *State v. Johnson*, 354 S.W.3d 627, 634 n.6 (Mo. banc 2011) (internal quotation omitted).

3

"'Where a trial court has granted a defendant's motion to suppress, 'we review the trial court's decision on appeal under an abuse of discretion standard. Only if the trial court's judgment is clearly erroneous will an appellate court reverse.'" *Emmett*, 346 S.W.3d at 419 (quoting *State v. Pfleiderer*, 8 S.W.3d 249, 253 (Mo. App. W.D. 1999) (quoting *State v. Milliorn*, 794 S.W.2d 181, 183 (Mo. banc 1990))). "Review is limited to determining whether the decision is supported by substantial evidence." *State v. Stover*, 388 S.W.3d 138, 149 (Mo. banc 2012). In making that determination, "[t]he facts and reasonable inferences from such facts are considered favorably to the trial court's ruling and contrary evidence and inferences are disregarded." *State v. Norfolk*, 366 S.W.3d 528, 531 (Mo. banc 2012). "We defer to the factual findings and credibility determinations made by the circuit court, remembering that the circuit court may choose to believe or disbelieve all or any part of the testimony presented by the State, even though it may be uncontradicted, and may find the State failed to meet its burden of proof."[4] *Emmett*, 346 S.W.3d at 420 (internal quotation omitted); *see also State v. Mignone*, No. WD75654, 2013 WL 5712452 at *2 (Mo. App. W.D. 2013). "The weight of the evidence and the credibility of the witnesses are for the trial court's determination." *State v. Kovach*, 839 S.W.2d 303, 307 (Mo. App. S.D. 1992).

---

[4] "Under the 'clearly erroneous' standard of review, the trial court's findings of fact are entitled to deference even where they are based on physical or documentary evidence which is equally available to an appellate court." *State v. Williams*, 334 S.W.3d 177, 181 (Mo. App. W.D. 2011). "'Even where the trial court's decision was based solely 'on the records,' we defer to the trial court as finder of fact in determining whether there is substantial evidence to support the judgment and whether the judgment is against the weight of the evidence.'" *Id*. (quoting *State v. Abeln*, 136 S.W.3d 803, 808 (Mo. App. W.D. 2004)).

4

Where the trial court makes no findings of fact in ruling on the motion to suppress, the trial court is presumed to have found all facts in accordance with its ruling. **State v. Gaw**, 285 S.W.3d 318, 324, 325 (Mo. banc 2009);[5] **Foster**, 392 S.W.3d at 578-79; **State v. Hamilton**, 227 S.W.3d 514, 515 (Mo. App. S.D. 2007); **State v. Abeln**, 136 S.W.3d 803, 808 (Mo. App. W.D. 2004); **State v. Kampschroeder**, 985 S.W.2d 396, 398 (Mo. App. E.D. 1999); **State v. Lacy**, 851 S.W.2d 623, 627 (Mo. App. E.D. 1993); **State v. Morr**, 811 S.W.2d 794, 796 (Mo. App. W.D. 1991). The trial court will be deemed to have implicitly found not credible, or entitled to little to no weight, any testimony or other evidence that does not support its ruling. **Lacy**, 851 S.W.2d at 627; **State v. Banks**, 922 S.W.2d 32, 40 (Mo. App. S.D. 1996).[6] "If the ruling is plausible, in light of the record viewed in its entirety, we will not reverse, even if we would have

---

[5] In *Gaw,* the Court stated:

> The trial court overruled Gaw's motion to suppress and admitted the testimony. The record, reviewed in the light most favorable to the trial court's ruling, disregarding contrary inferences, supports the admission of Gaw's statement that he was the driver. . . . **[T]he longstanding principle of Missouri appellate review is that when there are no findings of fact set out in the judgment by the trial court, the facts and reasonable inferences from such facts are considered favorably to the trial court's ruling and contrary inferences are disregarded.** Sgt. Frazier's testimony that his pre-*Mirandized* questioning of Gaw after the arrest for possession of marijuana was not part of a deliberate plan to undermine Gaw's *Miranda* protections supports the factual finding necessary to overrule Gaw's motion to suppress his admission that the was the driver of the pickup truck.

*Gaw*, 285 S.W.3d at 324-25 (emphasis added).

[6] *See also* **State v. Royal**, 610 S.W.2d 946, 948 (Mo. banc 1981) ("At the conclusion of the suppression hearing, the trial court entered its order suppressing all statements made prior to the giving of *Miranda* warnings, but did not specifically articulate the reasons for overruling appellant's motion to suppress statements made while incarcerated. Implicit in the trial court's silence and admission of the statements at trial is the conclusion that the appellant's testimony regarding the alleged requests for an attorney lacked credibility and that the statements were voluntarily given. While disposing of such a motion in this manner is not as clear as making definitive findings based on the evidence adduced at the suppression hearing, there is nothing inherently improper in so doing.").

5

weighed the evidence differently." **Harris**, 305 S.W.3d at 485; **Milliorn**, 794 S.W.2d at 184.

We note, at the outset, that this is not a case where the trial court's decision was rendered based on stipulated facts and the question presented to the trial court was merely an issue of law. The factual issues in this case were clearly contested. "A factual issue is contested if disputed in any manner, including by contesting the evidence presented to prove that fact." **Pearson v. Koster**, 367 S.W.3d 36, 44 (Mo. banc 2012). "[A] party can contest the evidence in many ways, such as by putting forth contrary evidence, cross-examining a witness, challenging the credibility of a witness, pointing out inconsistencies in evidence, or arguing the meaning of the evidence." **Id**. "Once contested, a trial court is free to disbelieve any, all or none of the evidence, and the appellate court is not to re-evaluate testimony through its own perspective." **Id**. (internal quotation omitted).

Avent filed a motion to suppress the evidence challenging the legality of her arrest. The State produced Corporal Owens to testify as to the circumstances surrounding that arrest. Avent cross-examined Corporal Owens, challenging his testimony by inferring bias and partiality, pointing out Corporal Owens selective omission of observations favorable to Avent, and by questioning the evidentiary weight of his observations and the reasonableness of inferences drawn therefrom. Avent obtained admissions by Corporal Owens that his various observations were indicative of the fact alcohol had been consumed but were not indicative of the amount consumed. Avent also elicited an abundance of testimony from Corporal Owens indicative of her

6

not being intoxicated.   Accordingly, the underlying facts of this case were certainly

contested.[7]  *See **Emmett***, 346 S.W.3d at 420 (noting that the State's contention that the

---

[7] The Dissent claims that the facts are not contested in this case and refers to parts of Avent's oral argument and the brief in an effort to support that claim.  But the arguments advanced by Avent on appeal and the context of various comments made by counsel on which the Dissent relies were part of Avent's counsel's alternative argument.  The initial argument advanced in her Respondent's Brief is that the trial court was not bound to believe or afford weight to any of the evidence presented by the State.  Respondent asserts:

> The State argues that the trial court clearly erred in sustaining defendant's Motion to Suppress in that there was probable cause to arrest defendant for driving while intoxicated because Cpl. Owens <u>testified</u> that the defendant had watery, glassy eyes; admitted to drinking four or five beers, had a strong odor of alcohol, had a positive PBT, and had six clues on the HGN test.

> The trial court was not bound to believe any of Cpl. Owens' testimony, even if uncontradicted.  State v. Wilson, 169 S.W.3d 870, 876 (Mo. App. W.D. 2005); State v. Emmett, 346 S.W.3d 418, 420 (Mo. App. S.D. 2011).  With no findings of fact and conclusions of law requested, there is no determination in the record as to which portions, if any, of Cpl. Owens' testimony the trial court believed as credible, or what weight was given to each part of his testimony. . . . The trial court is presumed to make findings consistent with its ruling under such circumstances.  State v. Abeln, 136 S.W.3d 803, 808 (Mo. App. W.D. 2004).

Respondent then recounts the facts and analysis of ***State v. Wilson***, 169 S.W.3d 870, 876 (Mo. App. W.D. 2005), and ***State v. Emmett***, 346 S.W.3d 418, 420 (Mo. App. S.D. 2011), and argues that they are on point.  The argument concludes:

> [The State] has built its argument that the trial court erred by treating all of the evidence in the State's favor as true, and has disregarded all the evidence that is favorable to the defendant and the trial court's ruling.  This is opposite the applicable standard of review . . .. Under this standard, the State's evidence pertaining to defendant's eyes, breath, admissions as to drinking, the PBT test, and the HGN test should be disregarded, and this court should look at the evidence that supports the trial court's ruling. . . .

> The trial court's ruling sustaining defendant's Motion to Suppress should be affirmed because the trial court was free to disbelieve all or part of the State's evidence, even if uncontradicted, and there was substantial evidence to support the trial court's ruling.

Respondent then goes on to make an alternative argument: "**If this Court does not defer to the trial court's ruling pursuant to the standard of review as expressed above, and even if Cpl. Owens' testimony is accepted as true, the totality of the circumstances indicate that defendant was not intoxicated; therefore, there was no probable cause to arrest.**"  (emphasis added).  The language relied upon by the Dissent in asserting that Respondent's counsel conceded that his client did not perform well on the HGN test and other facts contained in Cpl. Owens' testimony arises within the context of that alternative argument.

7

facts were not in dispute was belied by the fact the defendant filed a motion to suppress challenging the legality of her arrest, there were no factual stipulations in the record, the State produced witnesses to testify about the circumstances of the arrest, and the defendant cross-examined those witnesses); **Mignone**, 2013 WL 5712452 at *3 ("Mignone contested the evidence through cross-examination of the trooper regarding his observations and by argument to the trial court regarding the nature and quality of the evidence.").

While Avent conceded during oral argument that she had admitted consuming alcohol on the day of her arrest, that a PBT was administered, and that she had alcohol on her breath,[8] Avent affirmatively asserts on appeal that the trial court was not obligated to, and presumably did not, accept as credible Corporal Owen's testimony regarding (a) her having watery/glassy eyes,[9] (b) her admitting to have consumed four

---

In short, the Dissent disregards Respondent's principal argument and focuses only on the alternative argument, in which counsel accepts, *arguendo*, that Cpl. Owens' testimony was true. In so doing, the Dissent treats as conceded facts, matters contained in Cpl. Owens' testimony that were accepted as true by Respondent's attorney solely for the purposes of his alternative argument.

[8] Despite our clear acknowledgement that these facts were conceded at oral argument and our treatment of them as such in conducting our analysis, the Dissent inexplicably contends that we have ignored the concessions Avent made during oral argument. **Dissenting Op.** at *3 n.9. Unlike the Dissent, we have simply limited our treatment of those concessions to what was actually conceded (ie. Avent's simple concession that there was some alcohol on her breath is not viewed as an admission that the odor therefrom was "strong" as characterized by the Dissent).

[9] At oral argument, when asked if there was any dispute as to whether Avent's eyes were glassy and watery, counsel stated, "No dispute, but that doesn't mean no dispute by me. I didn't challenge that directly but I don't have to." Counsel appears to be referencing the fact that he did not present conflicting evidence at trial but that the court was entitled to disbelieve even uncontradicted evidence. Counsel's comment certainly does not abandon Avent's position that the trial court could have found not credible or entitled to little weight Corporal Owen's testimony about her eyes being watery and/or glassy.

Moreover, when questioned about what he meant by Avent having watery eyes, Corporal Owens testified that Avent seemed to have "a little more excess water than what a normal person would have." When asked what he meant by glassy eyes, Corporal Owens stated that he thought Avent's eyes were "kind of shiny." He further testified to his belief that water and shiny eyes were close to the same thing. He also

or five beers in the four to five hours preceding her arrest, (c) her having a strong odor of alcohol on her breath, or (d) her exhibiting six clues of intoxication on the HGN test. The State, on the other hand, takes the position that, because the trial court made some gratuitous oral statements about some of the State's evidence during the hearing,[10] the trial court must be deemed to have accepted all of the remaining testimony from Corporal Owens as credible and entitled to great weight. The State then argues that the testimony of Corporal Owens not specifically referenced in the trial court's gratuitous comments -- Corporal Owens' testimony regarding her having watery/glassy eyes, her admitting to have consumed four or five beers in the four to five hours preceding her arrest, her having a strong odor of alcohol on her breath, the PBT, and her exhibiting six clues of intoxication on the HGN test -- was "sufficient" to establish that Corporal Owens had a reasonable belief that Avert was driving while intoxicated.

Under our standard of review, however, the issue before this Court is not whether the evidence presented would have been sufficient to support a contrary decision. Rather, the issue is whether the trial court clearly erred in concluding that the State failed to prove that probable cause existed, deferring to the trial court's ability to assess

---

acknowledged that watery and glassy eyes might have nothing to do with the consumption of alcohol and that they definitely were not indicative of the extent of any alcohol consumption. Thus, even if it were conceded that Avent had watery/glassy eyes, the weight to be afforded that fact was most certainly contested at trial and on appeal.

[10] The trial court commented on the fact that, while Avent was driving above the posted speed limit, Corporal Owens did not view any weaving, sudden stopping, or other driving error indicative of her lacking control over the vehicle and being potentially intoxicated. The Court also noted that the testimony reflected that Avent had the presence of mind to ask Corporal Owens to move her vehicle and secure it in the parking lot of a nearby school when he arrested her. The Court further observed that Avent did well on all of the tests given to her. The Court stated that there wasn't any doubt that Avent had consumed some alcohol within four hours of the traffic stop but that under the totality of the evidence presented it did not believe that the State proved that Corporal Owens had probable cause to believe Avent was intoxicated.

9

credibility and the weight to be given to the evidence. The trial court was not bound to believe any of Corporal Owen's testimony, even if uncontradicted, and the fact that the court made gratuitous comments related to some of the evidence does not establish that the remaining evidence was deemed credible or entitled to any evidentiary weight. In fact, gratuitous oral statements made by the trial court are to be disregarded by this Court entirely unless there is an ambiguity in the language of the written judgment or order. *Harvey v. Director of Revenue*, 371 S.W.3d 824, 828 (Mo. App. W.D. 2012).[11]

Thus, under our standard of review, the trial court must be deemed to have found not credible, or entitled to little weight, Corporal Owens' testimony regarding Avent having watery/glassy eyes, her admitting to have consumed four or five beers in the four to five hours preceding her arrest, her having a strong odor of alcohol on her breath, and her exhibiting six clues of intoxication on the HGN test.

The State's reliance on *Hollon v. Director of Revenue*, 277 S.W.3d 734, 736 (Mo. App. W.D. 2008), in support of its argument is likewise misplaced. *Hollon* was a court-tried, civil, license-revocation case decided prior to *White v. Director of Revenue*, 321 S.W.3d 298 (Mo. banc 2010). Prior to *White*, license revocation cases "applied section 302.535 to create a presumption of validity of the director's evidence [and] to place a burden on the driver to produce evidence that controverts or contradicts the director's evidence for the trial court to disbelieve the evidence on a contested

---

[11] Moreover, a careful, thorough reading of the trial judge's comments in their entirety reveals nothing inconsistent with her ruling. The judge definitely notes a lot of the evidence negating intoxication. She does not specifically mention the indicia of intoxication, but clearly by her ruling, she either did not believe that evidence or gave it little weight when compared with all the other evidence.

issue." ***White***, 321 S.W.3d at 307. Thus, in ***Hollon***, we held that the trial court's finding that the portable breath test results in that case were unreliable was not supported by the record. ***Hollon***, 277 S.W.3d at 737. The PBT results reflected that Hollon's blood alcohol level was ***over the legal limit***. ***Id***. at 735. Combining the PBT result with the conceded facts that Hollon was speeding, that he told the officer he had recently consumed a couple of drinks, that he had alcohol on his breath, and that his eyes were glassy and watery, this Court concluded that "a cautious, trained, and prudent officer would believe he had reasonable grounds to arrest." ***Hollon***, 277 S.W.3d at 738. But ***White*** overruled all those cases that had created a presumption of validity for the director's evidence and placed a burden on the driver to produce evidence to the contrary. ***White***, 321 S.W.3d at 307. That approach is no longer proper, and ***Hollon*** provides no support for the State's argument in the post-***White*** era. Moreover, the fact that the PBT results showed intoxication in *Hollon*, as opposed to merely showing alcohol on Avent's breath in the case at bar; the fact that alcohol was admitted to having been consumed within an hour of the stop in *Hollon* as opposed to having simply been consumed sometime earlier in the day in the case at bar; and the fact that more evidence favorable to the driver was presented in this case, clearly distinguishes these two cases.[12]

---

[12] The Dissent cites *Denton v. Director of Revenue*, 172 S.W.3d 909, 911-12 (Mo. App. S.D. 2005), in its tenth footnote. ***Dissenting Op.*** at *7 n.10. *Denton* has absolutely no relevance to the case at bar. *Denton*, which was decided pre-*White*, involved the Director of Revenue's suspension of a driver's license under § 302.505.1, which calls for a license suspension where a driver under the age of twenty-one has been stopped upon probable cause to believe the person committed a traffic offense and was driving with a ***blood alcohol content of .02%*** or more. ***Id.*** at 911. Thus, the issue was essentially whether the officer had probable cause to believe the eighteen-year-old driver had recently consumed enough alcohol

11

Properly viewed in accordance with our standard of review, the evidence in this case reflects that Corporal Owens was aware that Avent was speeding, that she had some alcohol on her breath, a fact confirmed by the PBT, and that she had admitted having consumed some alcohol on the afternoon in question. Corporal Owens was also aware that she had exhibited a significant number of behaviors and physical characteristics indicative of not being intoxicated. Corporal Owens did not observe Avent showing any difficulty controlling her vehicle. After he initiated the traffic stop, Avent stopped her car promptly in a controlled, reasonable manner. When asked, Avent promptly provided her license and registration to Corporal Owens without difficulty. Avent's eyes were not bloodshot, dilated, constricted, staring, or slow to react to light. She did not appear confused or incoherent, was wholly cooperative with Corporal Owens, and she spoke clearly when communicating with him. Avent showed no difficulty when walking to and from the patrol car and performed well on the walk-and-turn and one-leg-stand tests.

The trial court weighed the evidence and determined that, under the totality of the circumstances existing at the time of Avent's arrest, Corporal Owens did not have probable cause to believe that Avent was intoxicated. "Whether evidence existed from which the trial court could have arrived at a contrary conclusion is immaterial." *State v. McDonald*, 170 S.W.3d 535, 537 (Mo. App. W.D. 2005). If we were to focus only on

to have a blood alcohol content of .02% or more, and the evidence was viewed on appeal in the light most favorable to the Director. *Id*. The *Denton* court concluded that evidence that the driver had flipped her car, admitted having been drinking, had a moderate smell of alcohol on her breath, and had bloodshot and glassy eyes was sufficient to support the trial court's finding that the officer had probable cause to believe her blood alcohol content was .02% or more. *Id*.

12

the evidence supporting probable cause, it would turn our standard of review on its head. We would be disregarding the evidence favorable to the court's ruling. Even if some issues are conceded, it doesn't mean other evidence can and should be ignored by this Court. To the extent the trial court found credible any of the officer's observations that could be indicative of intoxication, the court clearly afforded greater weight to the evidence to the contrary. It is not within the province of this Court to reweigh the evidence. **Harris**, 305 S.W.3d at 485. "In our review of the trial court's denial of the motion to suppress, we look only to determine whether the evidence was sufficient to support the ruling. It is not this Court's province to substitute its discretion for that of the trial court, but instead from the record before us which encompasses all the circumstances, the total atmosphere of the case, we must decide only whether there was adequate evidence to support the trial court's action." **State v. Burkhardt**, 795 S.W.2d 399, 404 (Mo. banc 1990) (internal citations omitted).

**State v. Robertson**, 328 S.W.3d 745 (Mo. App. W.D. 2010) is instructive. In **Robertson**, the trial court granted a motion to suppress the results of two portable breath tests which were well in excess of .080. **Id**. at 749-50. The court admitted the results into evidence for the purpose of the hearing on the motion to suppress but did not accept or rely on them. **Id**. at 751. We concluded that the court gave the PBT results little or no weight because the results were inconsistent with other substantial evidence suggesting the driver was not intoxicated. **Id**. at 751-52. We concluded that:

> Without the portable breathalyzer test results, the trooper in this case did not have probable cause to arrest Robertson. Indeed, the trooper testified that, although Robertson smelled of intoxicants and had watery,

13

bloodshot, and glassy eyes, he probably would not have arrested Robertson without the results from the portable breathalyzer test. Robertson performed several sobriety tests without any difficulty. She counted and recited the portions of the alphabet that the trooper asked her to do, and she completed the one-leg stand test and the walk-and-turn test without any standard clues of impairment. Although Robertson was stopped for speeding, speeding is not a sign of intoxication. After reviewing and taking into account the credibility of all the evidence, the circuit court exercised its discretion and sustained the motion to suppress.

*Id*. at 752.

Similarly, in this case, while some indicia of intoxication were recounted by Corporal Owens, there was also substantial evidence supporting the conclusion that there was no probable cause to believe Avent was intoxicated. The trial court weighed the credibility of all the evidence, disbelieved or afforded little weight to Corporal Owens's testimony, and exercised its discretion to sustain the motion to suppress. The trial court's determination that the State failed to prove by a preponderance of the evidence that Corporal Owens had probable cause to believe Avent was intoxicated is not clearly erroneous.

The trial court's ruling, suppressing "[a]ll evidence and statements obtained following defendant's arrest," is, therefore, affirmed.

_____
Joseph M. Ellis, Judge

Howard, J. concurs
Pfeiffer, J. dissents in separate opinion filed

14



# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Appellant, | ) |
| | ) WD76395 |
| v. | ) |
| | ) OPINION FILED: |
| | ) April 1, 2014 |
| KATHRYN AVENT, | ) |
| | ) |
| Respondent. | ) |

## DISSENTING OPINION

The *conceded* facts in this case are virtually identical to the *conceded* facts in *Hollon v. Director of Revenue*, 277 S.W.3d 734 (Mo. App. W.D. 2008), another case in which the trial court found no probable cause to exist for a DWI arrest. Because there were sufficient *conceded* facts regarding probable cause, we reversed the trial court in *Hollon*. I respectfully submit that we must do the same today. Thus, I respectfully dissent.

On the evening of June 22, 2012, Kathryn Avent ("Avent") was 20 years old, had been drinking excessively,[1] and was driving her Mercedes Benz vehicle far in excess of the posted

---

[1] Section 577.012.1 defines excessive blood alcohol content as eight hundredths (.08%) of one percent or more by weight of alcohol in a person's blood. Avent's blood alcohol content was ultimately recorded by a Breathalyzer DataMaster machine at .150%. As I explain in footnote 8, the trial court agreed with the parties to take the motion to suppress "with the case" and the parties proceeded with the trial. This case illustrates why the record becomes so confusing upon doing so and illustrates why the statute (§ 542.296.3) and rule (Rule 24.05) authorizing

speed limit[2] on "back roads" with her friends.  She smelled of alcohol,[3] admitted consumption of

alcohol,[4] tested positive for the presence of alcohol on a portable breath test ("PBT"),[5] her eyes

---

motions to suppress anticipate the general rule that these motions should be ruled upon *before* trial.  Here, at trial, the following colloquy occurred upon the State's introduction of the BAC evidence at trial:

> [THE STATE]:  Your Honor, at this time the State would move to enter into evidence State's Exhibit 3, . . . Trooper Owens' Type 3 permit, and State's Exhibit 4, the DataMaster evidence ticket [reflecting .150% BAC].
> [AVENT'S COUNSEL]:  No objection.
> THE COURT:  To either?  Do you have no objection to either?
> [AVENT'S COUNSEL]:  No.
> THE COURT:  Okay.
> [AVENT'S COUNSEL]:  I have no objection.
> THE COURT:  All right.  Then the Court receives State's Exhibits 3 and 4.

This is wholly illogical.  Stating "no objection" to post-arrest evidence when post-arrest evidence is the subject of the defendant's pending motion to suppress is contradictory.  Further, there is no separate colloquy on the record confirming that Avent was stipulating to the admission of this post-arrest evidence subject to Avent's motion to suppress.  At minimum, this is a sloppy record.  At worst (for the defendant), this colloquy could be deemed a waiver to objection to the subject evidence.  We have warned about this exact issue in the past:

> Counsel ran some risk of being considered on appeal to have waived objection to the evidence. The only sure way to avoid that risk is to either (1) have the judge specifically recite for the record that the objection is preserved throughout; or (2) respectfully demand a ruling on the pre-trial motion before trial; and then, throughout the trial, as necessary, reiterate the objection, so that the court may reconsider at each stage of the proceeding.

*State v. Apel*, 156 S.W.3d 461, 466 n.1 (Mo. App. W.D. 2005).  In *Apel*, it was the trial court that announced its intention to take the motion to suppress with the case and, as such, one can understand why we chose not to penalize the defendant for the trial court's refusal to rule the motion to suppress before trial (a practice we have discouraged). Here, the trial court noted on the record that, "I've never done this."  I respectfully submit that it should *not* be done even where, as here, the parties requested that the trial court do so.  Otherwise, the exception to use discretion to consider a motion to suppress *during* trial will swallow the general rule that these matters are intended to be resolved *before* trial.  That said, the conduct of the parties on appeal, including the State, is that the objection to this evidence via motion to suppress has not been waived and both the majority opinion and I have treated it accordingly.

[2] Corporal Owens testified that Avent was driving almost twice the posted speed limit.  Avent does not contest the officer's investigatory stop of Avent, stating at the oral argument that, "we have no issue with the stop. The stop's legal.  [Avent] was speeding."  *See State v. Garriott*, 151 S.W.3d 403, 408 (Mo. App. W.D. 2004) ("A traffic stop is justified if [it is] based on the violation of traffic laws.").

[3] "The odor of alcohol is one of the classic indicia of intoxication."  *Flaiz v. Dir. of Revenue*, 182 S.W.3d 244, 249 (Mo. App. W.D. 2005).

[4] Upon Avent's admission to her age (20) and consumption of alcohol, there were any number of alcohol related offenses related to minors that Corporal Owens could have arrested Avent for with no additional information. *See* § 544.216 (Any law enforcement officer "may arrest on view, and without a warrant, any person . . . such officer has reasonable grounds to believe has violated any law of this state, including a misdemeanor or infraction."). Further, our United States Supreme Court has indicated that the stated basis for the officer's arrest (here, DWI) does not exclusively frame the analysis for reviewing an officer's probable cause determination to arrest a person, to the extent that there may be other bases upon which the officer may have arrested the person.  Specifically, the United Supreme Court has declared:

> [A]n arresting officer's state of mind (except for the facts that he knows) is *irrelevant to the existence of probable cause*.  That is to say, *his subjective reason for making the arrest need not*

2

were glassy and watery,[6] and she exhibited six out of six clues of impairment on the horizontal gaze nystagmus ("HGN") test.[7]

Apparently, however, at this young age, Avent was a rather highly functioning person with a BAC of .150%. Upon Corporal Owens activating his emergency lights and initiating a traffic stop, Avent pulled her vehicle over in a controlled, reasonable fashion; Avent did not appear confused or incoherent and she communicated clearly to Corporal Owens without stuttering, mumbling, or slurring of speech; Avent was not combative and she was not hiccupping or belching; Avent performed satisfactorily on the walk-and-turn test and the one-leg stand test.

At trial,[8] these facts constituted the two "poster lists" of "probable cause" evidence that Avent's counsel placed before the trial court. *These facts were **not contested**. In fact, Avent's*

---

*be the criminal offense as to which the known facts provide probable cause.* As we have repeatedly explained, the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action. The Fourth Amendment's concern with "reasonableness" allows certain actions to be taken in certain circumstances, *whatever the subjective intent*.

. . . .

While it is assuredly good police practice to inform a person of the reason for his arrest at the time he is taken into custody, we have never held that to be constitutionally required.

*Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004) (emphasis added) (numerous internal citations & quotations omitted). However, unlike *Devenpeck*, this issue was not raised with the trial court (even though Avent was also charged with possession of intoxicating liquor by a minor in violation of section 311.325); hence, it cannot serve as a basis for reversal at this juncture of the case. *State v. Ramires*, 152 S.W.3d 385, 397 (Mo. App. W.D. 2004).

[5] While not admissible as evidence of BAC, a PBT is admissible as evidence of probable cause to arrest. § 577.021.3.

[6] *See Flaiz*, 182 S.W.3d at 249 (watery eyes are an indicator of intoxication).

[7] This test examines a subject's eye movements for an involuntary jerking, or nystagmus, which, when the test is performed properly (Avent has not challenged Corporal Owens's administration of the HGN test), can be an indicator of intoxication. *State v. Stone*, 280 S.W.3d 111, 114 (Mo. App. E.D. 2009).

[8] The majority opinion refers to the trial as an evidentiary hearing. It was, in fact, the entire trial, including closing arguments. At the request of the parties, the trial court reluctantly took the motion to suppress "with the case," even mentioning that the court was concerned about jeopardy implications. Yet, the trial court did not rule on the motion to suppress *before* trial or even *during* trial; instead, the trial court ruled on the motion to suppress *after* trial. Time and time again, we have discouraged the practice of taking a motion to suppress "with the case." *See State v. Ingram*, 341 S.W.3d 800, 803 & n.1 (Mo. App. E.D. 2011); *State v. Apel*, 156 S.W.3d 461, 465-66, 466 n.1 (Mo. App. W.D. 2005); *State v. Rains*, 537 S.W.2d 219, 223 n.1 (Mo. App. 1976). The State would do well to review this court's relatively recent opinion in *State v. Connell*, 326 S.W.3d 865 (Mo. App. W.D. 2010), as the trial

3

*counsel actually **<u>conceded</u>** these facts before the trial court, in appellate briefing to this court, and in oral argument to this court.* Though the majority opinion casts these facts as "contested," the majority opinion is, frankly, ignoring Avent's concessions in doing so.[9] The majority opinion is ignoring the "compare the two poster lists" argument that was *actually* made by Avent. And, the reason is simple:

"[W]here the facts are contested, deference is given to the trial court's assessment of the evidence and credibility of the witnesses." *Velluto v. Dir. of Revenue*, 383 S.W.3d 14, 17 (Mo. App. E.D. 2012) (citing *White v. Dir. of Revenue*, 321 S.W.3d 298, 307-08 (Mo. banc 2010)). However, "[i]f the evidence is uncontested or admitted so that the real issue is a legal one, then there is no need to defer to the trial court's [ruling]." *Id.* Though there are numerous scenarios in which evidence is to be deemed "uncontested," relevant to this appeal, evidence is "uncontested when a party has admitted in its pleadings, by counsel, or through the [party's] individual testimony the basic facts of [the other party's] case. In such cases, the issue is legal,

---

court's perceived concerns about this backwards process of ruling the motion to suppress *after* trial is a valid concern. In *Connell*, under remarkably similar procedural circumstances, we concluded that the trial court's suppression ruling *after* trial (granting the motion) amounted to a judgment of acquittal, and we dismissed the appeal for lack of jurisdiction, effectively depriving the State of interlocutory review of the suppression ruling. Although the record is clear that the parties did not intend such a result and neither the majority opinion nor I have recommended dismissal, this "take the motion with the case" procedural process is not one without risk. This court's jurisdiction is statutory, not subject to stipulation by parties. I join the litany of case precedent in discouraging this procedural process for obtaining a ruling on a motion to suppress "taken with the case" *after* trial.

[9] At oral argument: (1) Avent's counsel conceded that "there was . . . a positive result for the portable breath test." (2) Avent's counsel conceded that "there was . . . alcohol on [Avent's] breath." (3) When asked if Avent admitted, though only 20 years old, she had been drinking before deciding to drive her vehicle, Avent's counsel succinctly conceded, "Yes." (4) When asked if there was any dispute as to whether or not she had glassy and watery eyes, Avent's counsel conceded, "No dispute." The context of these concessions was *not*, as the majority suggests, an *alternative* argument. Plainly and simply, *these facts were conceded*. And, as explained more fully in this dissent, this was consistent with the *actual* "poster list" argument that was *actually* made to the trial court, was *actually* made in Avent's appellate briefing, and was *actually* made at oral argument. The only thing inconsistent with Avent's argument is the majority opinion's characterization of it. Frankly, this is the distinguishing issue between the majority opinion and my dissent. I simply am not willing to apply an inapplicable standard of review to "ignore contrary evidence" when that contrary evidence is *conceded*, particularly where our Supreme Court has instructed us to do just the opposite. *White v. Dir. of Revenue*, 321 S.W.3d 298, 308 (Mo. banc 2010).

4

and there is no finding of fact to which to defer." *White*, 321 S.W.3d at 308 (internal citations omitted).

Thus, the majority opinion attempts to brand this as a case where the trial court is weighing the *evidence* as opposed to the *law*. The difference is one with a significant distinction—one that is ignored by the majority opinion.

**Conceded Facts**

At oral argument, Avent's counsel conceded that, prior to her arrest, Avent was speeding; there was alcohol on her breath; she admitted to alcohol consumption (even though she was not of legal age to consume alcohol); there is "no dispute" that she had glassy and watery eyes; and there was a positive result for the presence of alcohol with the PBT. Likewise, in her appellate briefing to this court, Avent's counsel acknowledged that his client did not perform well on the HGN test. In the face of these conceded facts, Avent's counsel makes the following argument (at oral argument) that the majority opinion ignores:

> What's critical about this case is all the other evidence. The State has disregarded all of the evidence that is favorable to the judgment. We haven't even heard it. I mean, my client stops appropriately, picks the right location. She has all these facts. Walk and turn; one leg stand test. These are incredibly complicated tests, but it's not just those my client passed. All of the indications that an officer looks for from the way they stop the vehicle, the way they get out of the vehicle, the way they talk, I mean, her speech isn't slurred, her eyes aren't bloodshot. *We made a list, a **poster listing indications of intoxication, indications that my client's not intoxicated**, and it wasn't even close.* The amount of information provided by this officer would tend to indicate my client was not intoxicated. And I think it was rather overwhelming. Those items are listed in the briefs. So I think at some point *just because there's some evidence that my client consumed alcohol*, when you look at the totality of the circumstances here, the indications are that my client's not intoxicated.

(Emphasis added.)

Avent's argument is similarly expressed in appellate briefing to this court. For example, Avent's appellate briefing states:

5

[Avent] acknowledges that in certain circumstances observation of eyes and breath, and 4 or more clues on the HGN test can establish probable cause for driving while intoxicated especially when an actual driving error or inability to control a motor vehicle exists (or some other type of impairment exists). However, when additional field sobriety tests are given and passed, and additional observations tend to indicate that the person is not intoxicated, at some point the totality of the circumstances indicate that the person is not intoxicated, negating probable cause for arrest for DWI. [Avent] asserts such is the case here.

The critical focus of Avent's argument to the trial court and to this court is that Avent concedes that there was evidence of Avent's intoxication. But, in her "poster list" presentation, Avent submits that there are more pieces of evidence pointing away from intoxication. Hence, she has argued steadfastly, this "my list is better than your list" argument must carry the day. However, Avent's "list" argument, which the trial court accepted, is ***not*** the law.

Irrespective, the facts are conceded. Application of the *law* to these conceded "poster lists" of *facts* to determine whether probable cause exists to arrest Avent for DWI is a question that we answer without deference to the trial court's suppression ruling. The majority opinion, however, has ignored the procedural posture of this case.

**Standard of Review**

"Probable cause is a legal question that we review without deference to the trial court's [ruling]." *Velluto*, 383 S.W.3d at 18. "[A]lthough we review the circuit court's conclusions as to the historical facts under a clearly erroneous standard, the issue of whether or not the Fourth Amendment has been violated is an issue of law that we review de novo." *State v. Robertson*, 328 S.W.3d 745, 750 (Mo. App. W.D. 2010). Once a party has admitted the basic facts, "the issue is legal, and there is no finding of fact to which to defer." *White*, 321 S.W.3d at 308.

In *Ornelas v. United States*, the Supreme Court held that "determinations of . . . probable cause should be reviewed *de novo* on appeal." 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). The de novo review is an independent review and the Court has never "expressly deferred to the trial court's determination." *Id.* at 697, 116 S.Ct. 1657. . . . The trial court's probable cause

6

determination is reviewed by establishing the facts and applying the law to those facts: . . . "The historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the [relevant] statutory [or constitutional] standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated." *Id.* at 696-97, 116 S.Ct. 1657 (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982)).

*White*, 321 S.W.3d at 310.

In other words, this is *not* a review of a suppression ruling in which the historical facts leading to Avent's arrest are in dispute. Appellate review of a trial court's historical factual findings are reviewed on a clearly erroneous standard. But, here, the historical facts are conceded; hence, our review is an application of the *law* of probable cause to the conceded historical *facts—de novo* review.

**Probable Cause**

The law of probable cause in the context of a DWI arrest has been succinctly described by our Supreme Court as follows:

Although section 577.041 states that the arresting officer must have "reasonable grounds" to believe the person was driving while intoxicated, "reasonable grounds" is virtually synonymous with probable cause. *Guhr v. Dir. of Revenue*, 228 S.W.3d 581, 584 (Mo. banc 2007) (quoting *Hinnah v. Dir. of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002)). As a result, this Court has cited to section 577.041 cases interchangeably with section 302.535 cases when discussing the issues related to probable cause. . . ." *See Brown v. Dir. of Revenue*, 85 S.W.3d 1, 4 n.4 (Mo. banc 2002).

*White*, 321 S.W.3d at 305 n.6.

[P]robable cause will exist when a police officer observes an unusual or illegal operation of a motor vehicle and **observes indicia of intoxication** upon coming into contact with the motorist. Probable cause . . . will exist when the surrounding facts and circumstances demonstrate to the senses of a reasonably prudent person that a particular offense has been or is being committed. The level of proof necessary to show probable cause . . . is substantially less than that required to establish guilt beyond a reasonable doubt. There is a vast gulf between the quantum of information necessary to establish probable cause and the quantum of evidence required to prove guilt beyond a reasonable doubt. The trial court must

7

assess the facts by viewing the situation as it would have appeared to a prudent, cautious, and trained police officer.

*Brown v. Dir. of Revenue*, 85 S.W.3d 1, 4 (Mo. banc 2002) (numerous internal citations & quotations omitted) (emphasis added).

Of note, our Supreme Court's declaration of the law of probable cause in a DWI setting is conspicuously silent about the notion that the "observations of indicia of intoxication" must somehow be greater than the "list" of indicia that the driver may not be intoxicated. Instead, our Supreme Court declares that the arresting officer must observe "unusual or illegal operation of a motor vehicle and observes indicia of intoxication." I respectfully submit that the rationale for this principle of law is, as our Supreme Court has stated: that "there is a vast gulf between the quantum of information necessary to establish probable cause and the quantum of evidence required to prove guilt beyond a reasonable doubt."[10] It follows:

> Proof of probable cause need only meet the preponderance of the evidence standard. This merely requires that the evidence, taken as a whole, is sufficient to show the fact to be proven is more likely than not. The level of proof necessary to show probable cause for suspension or revocation of a driver's license is "substantially less" than that required to establish guilt beyond a reasonable doubt.

*Hager v. Dir. of Revenue*, 284 S.W.3d 192, 197 (Mo. App. S.D. 2009) (citations omitted).

"Whether the driver is under the influence of alcohol or any other substance is irrelevant. The relevant inquiry is whether or not the arresting officer had reasonable grounds for believing

---

[10] For example, *see Denton v. Director of Revenue*, 172 S.W.3d 909, 911-12 (Mo. App. S.D. 2005), where probable cause was found to exist where the defendant undisputedly committed driver error, admitted alcohol consumption, smelled of alcohol, and had bloodshot and glassy eyes, but had also successfully performed every field sobriety test that was administered by the arresting officer. The majority opinion attempts to distinguish *Denton* by stating that the relevant BAC level was .02% instead of .08%. With all due respect, I am not convinced that this is a distinction with much difference at all. Like the driver in *Denton*, Avent was under the legal age for lawful consumption of alcohol, conceded commission of driving error, conceded alcohol consumption and the corresponding smell of alcohol, and conceded glassy eyes; yet, like the under-aged driver in *Denton*, she performed fairly well with those acts requiring physical acuity.

8

that the arrested person was driving while in either an intoxicated or drugged condition."

*Johnson v. Dir. of Revenue*, 168 S.W.3d 139, 141 (Mo. App. W.D. 2005).

## The Law of Probable Cause Applied to the Conceded Facts

In *Hollon v. Director of Revenue*, the court noted that:

> Hollon *concedes* that he was speeding, that he told the officer that he had consumed a couple of drinks, that he had alcohol on his breath, and that his eyes were glassy and watery. These facts were sufficient for Corporal Angle to suspect that Hollon may have been driving while intoxicated and justified his decision to administer a portable breath test as authorized by § 577.021 [the results of which indicated that Hollon's blood alcohol level was over the legal limit].[11]

277 S.W.3d 734, 736 (Mo. App. W.D. 2008) (emphasis added). The majority opinion spends a considerable amount of word space attempting to avoid the holding of *Hollon*, as the holding in *Hollon* is at odds with the majority opinion's ruling today. Principally, the majority opinion professes to avoid the holding in *Hollon* by suggesting that because *Hollon* was pre-*White*, it would not have applied the correct deferential review of the evidence. But, as the majority opinion must concede, the salient facts of *Hollon* were **conceded**; they were not the product some sort of pre-*White* deference (or lack thereof) standard. As such, *Hollon*'s application of the *law* of probable cause to the *facts* constitutes binding precedent on the probable cause analysis in the present case. Ultimately, the conceded facts and results of the PBT led the *Hollon* court to conclude:

> When the portable breath test results in this case are considered in conjunction with the alcohol on [defendant's] breath, his admission that he had been drinking, and his glassy and watery eyes, *a cautious, trained, and prudent officer would believe he had reasonable grounds to arrest [the defendant]. See Peters v. Director of Revenue*, 35 S.W.3d 891, 896-97 (Mo. App. S.D. 2001) (holding probable cause to arrest established where driver was pulled over for speeding,

---

[11] It is also conceded in *Hollon* that Hollon failed two field sobriety tests and passed two others; but, since it was determined by the trial court that Corporal Angle had failed to properly administer the field sobriety tests, the results of those tests were ignored by this court in its appellate opinion. *Hollon*, 277 S.W.3d at 735. The *Hollon* court did, however, note that field sobriety testing merely serves to supplement an officer's overall conclusions regarding probable cause "field" analysis by the officer. *Id.* at 738.

smelled moderately of alcohol, admitted consuming some beer, had glassy eyes, and failed one field sobriety test); *see also Flaiz v. Director of Revenue*, 182 S.W.3d 244, 248-49 (Mo. App. W.D. 2005).

*Hollon*, 277 S.W.3d at 738 (emphasis added).

In *Flaiz*, we again reiterated that in analyzing the threshold conclusion by an officer that probable cause existed for arresting an individual for DWI, the issue "'is whether the officer had reasonable grounds to believe [d]river was intoxicated, not whether [he] was actually intoxicated.'" 182 S.W.3d at 248 (quoting *McCarthy v. Dir. of Revenue*, 120 S.W.3d 760, 763 (Mo. App. E.D. 2003)). *See also Martin v. Dir. of Revenue*, 248 S.W.3d 685, 688 (Mo. App. W.D. 2008).

Here, Corporal Owens lawfully stopped Avent's vehicle because she was speeding. Thereafter, Corporal Owens observed a strong odor of alcohol coming from Avent's breath; Avent, though 20 years old at the time of the traffic stop, admitted she had been drinking; Avent's eyes were watery and glassy; Avent failed one field sobriety test; and the results of the PBT were positive for the presence of alcohol. Corporal Owens explained his basis for probable cause to arrest Avent as follows:

> Just due to the totality of the circumstances, all my observations, [Avent] had watery, glassy eyes, a very strong odor of alcohol that was coming from her breath that became stronger as she spoke, the clues that I detected during the horizontal gaze nystagmus, her admission to consuming alcohol, high rate of speed, I mean, almost double the speed limit, and just based on all my observations, I placed her under arrest for DWI.

While it is also undisputed that Avent satisfactorily performed two other field sobriety tests, and her speech, demeanor, and ability to ambulate were all consistent with a person who was not intoxicated, the officer's probable cause determination leading to Avent's arrest only required the officer to have reasonable grounds to *believe* that Avent was intoxicated—not that she was *actually* intoxicated. Under the *conceded* factual circumstances of this case, much like

10

*Hollon*, "a cautious, trained, and prudent officer would believe he had reasonable grounds to arrest [Avent]" for suspicion of driving while intoxicated. *Hollon*, 277 S.W.3d at 738.

And, it turns out, there is good reason for this rule of law: Avent, a 20-year-old under-aged driver with a BAC of .150%, was not just slightly intoxicated—her BAC was almost twice the legal limit. As it turns out, Corporal Owens's prudence, caution, and training as a police officer led him to the reasonable conclusion of *believing* Avent was intoxicated. As a matter of *law* applied to the conceded *facts*, Corporal Owens had probable cause to arrest Avent for DWI.

I would reverse.

Mark D. Pfeiffer, Presiding Judge

11