STATE of Missouri, Appellant,

v.

**Johnnie Jewell WILLIAMS, Respondent.**

**No. WD 72530.**

Missouri Court of Appeals, Western District.

March 15, 2011.

Brent M. Nelson, Columbia, MO, for appellant.

Craig A. Johnston, Columbia, MO, for respondent.

Before: MARK D. PFEIFFER, P.J., and THOMAS H. NEWTON and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

This is a prosecution for driving while intoxicated. The State filed this interlocutory appeal pursuant to § 547.200.1[1] to challenge the Boone County Circuit Court's order sustaining defendant Johnnie Williams' motion to suppress evidence. The trial court granted Williams' motion based on its determination that the State did not have reasonable suspicion to stop Williams' vehicle for an alleged traffic offense. We affirm.

## Factual Background

This case arose out of a traffic stop at 4:20 a.m. on May 30, 2009. Columbia Police Officer Dallas Dollens testified that he observed that the passenger side headlight of Williams' pickup truck was not illuminated when he passed Williams' truck, traveling in the opposite direction, on Busi-

---

1. Statutory references are to the RSMo 2000, as updated through the 2010 Cumulative Supplement, unless otherwise indicated.

ness Loop 70 in Columbia. Officer Dollens made a U-turn, activated his emergency lights to stop Williams' vehicle, and then approached the vehicle and identified himself as a police officer.[2] Officer Dollens immediately detected a strong odor of intoxicants on Williams' breath. Williams' speech was slightly slurred, and his eyes were glassy and bloodshot.

Williams told Officer Dollens that he had consumed alcohol before operating his vehicle. Officer Dollens then asked Williams to perform certain standard field sobriety tests, but Williams was unable to accurately follow instructions. Officer Dollens then arrested Williams for driving while intoxicated, and transported him to the Columbia Police Department. After arriving at the station, Williams submitted to a breath test, which indicated that his blood alcohol content was above the legal limit. Williams also made incriminating statements in response to questions from the Department of Revenue's Alcohol Influence Report form.[3]

Williams sought to suppress all of the evidence collected after the stop on the basis that Officer Dollens' in-dash video showed that Williams' passenger side headlight was functioning properly, and therefore Officer Dollens lacked reasonable suspicion to initiate the stop. In the alternative, Williams sought to suppress all of the statements he made to Officer Dollens after arriving at the police station, because he did not knowingly and voluntarily waive his Miranda[4] rights. The circuit court held a hearing on the motions, and concluded that there was no basis for

the stop. It also stated that it was unnecessary for it to rule on the Miranda issue, because if the stop was unconstitutional, "everything thereafter falls." The State nevertheless requested a ruling on the Miranda issue to facilitate an appeal. The circuit court then sustained, in the alternative, Williams' motion to suppress based on his contention that he did not effectively waive his Miranda rights.

This appeal follows.

## Standard of Review

■■■ "At a motion to suppress hearing, the State bears the burden of proving that the seizure was constitutionally proper." *State v. Pike*, 162 S.W.3d 464, 472 (Mo. banc 2005).

A trial court's ruling on a motion to suppress will be reversed on appeal only if it is clearly erroneous. This Court defers to the trial court's factual findings and credibility determinations, and considers all evidence and reasonable inferences in the light most favorable to the trial court's ruling. Whether conduct violates the Fourth Amendment is an issue of law that this Court reviews *de novo*. *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007) (citations omitted); *accord*, *State v. Oliver*, 293 S.W.3d 437, 442 (Mo. banc 2009).

## Analysis

■■ The State claims in its first Point Relied On that Officer Dollens possessed reasonable suspicion to stop Williams' ve-

---

2. Notably, Office Dollens testified that he had spent approximately forty minutes with Williams about four hours earlier, in connection with the investigation of a domestic disturbance.

3. The State failed to provide the Alcohol Influence Report to this Court, and as a result,

it is unclear exactly what Williams said. The specific content of Williams' statements is not relevant to our analysis.

4. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

hicle because its passenger side headlight was not functioning. Even if the headlight was functioning properly, the State contends that Officer Dollens' sincere, but mistaken, belief that the light was off provided sufficient justification for the stop. We disagree.

■ "A routine traffic stop based upon an officer's observation of a violation of state traffic laws is a reasonable seizure under the Fourth Amendment." *Sund*, 215 S.W.3d at 723.

Officer Dollens testified at the evidentiary hearing that the sole reason he stopped Williams' vehicle was because the passenger side headlight was not functioning.[5] The State acknowledged at the suppression hearing that the recording from Officer Dollens' dashboard video camera appeared to show that Williams' passenger side headlight was illuminated before Officer Dollens initiated the stop. Officer Dollens attempted to explain this discrepancy away:

> This—it's an issue I've noticed before with the videos in our patrol cars. After reviewing the video, you can tell there is a distinction between the two lights, and our—the low quality of these cameras, there is a glare, especially at nighttime with lights, and that—I believe that's what the—that's what you see in the

video is the parking light on that side. You can see light coming from that side of the vehicle, and that's what you're seeing.

The circuit court found that Officer Dollens lacked a reasonable suspicion to justify stopping Williams' pickup truck. It explained the basis for its ruling at a hearing on the State's motion to reconsider:

> I understand the testimony of the officer with regard to it, but the video so clashes with that testimony.... I understand how cameras work. I also understand that that camera that probably sits in that car is probably some type of a wide-angle lens to pick up more, and I understand distortion. But when you look at the video, and I looked at it ... forwards and stopping it and looking at it, ... there is another light on there and it certainly appears that that other light is the headlight.
>
> . . . .
>
> ... [W]hen you look at the video, and you've seen it also, you just see the light on.[6]

The State has suggested we should not defer to the circuit court's factual findings because the dashboard video on which the trial court's ruling depends is equally available to us. We disagree.[7] In *White*

---

5. Section 307.045 requires that "every motor vehicle ... shall be equipped with at least two approved headlamps mounted at the same level with at least one on each side of the front of the vehicle," while § 307.060 mandates that each light be of "sufficient intensity to reveal persons and vehicles at a distance of at least one hundred feet ahead."

6. During the hearing on the State's motion to reconsider, the circuit court made additional statements suggesting that it was not itself resolving the factual issue of whether the headlight was on, but was instead merely holding that no jury could find beyond a reasonable doubt that the headlight was out. On appeal, the State does not argue that the

circuit court did not itself resolve the factual issue. Moreover, we note that the court's written order granting the motion to suppress states unambiguously that the "Court finds no basis for the stop of Def[endan]t."

7. It is at least arguable that the trial court's findings were not based solely on the dashboard video: the trial court also heard Officer Dollens' testimony as to what he observed, and his effort to explain the seeming inconsistency between his observations and the dashboard video. To the extent that the trial court's factual findings were based on live testimony, this would further justify deferential review. *See State v. Hughes*, 272 S.W.3d 246, 254 (Mo.App. W.D.2008).

*v. Director of Revenue*, 321 S.W.3d 298 (Mo. banc 2010), the Missouri Supreme Court made clear that the circuit court's findings of historical fact in connection with probable cause determinations are reviewed only for clear error. The court looked to United States Supreme Court precedent and cautioned that " 'a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.' " *Id.* at 310 (quoting *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).

*White* noted that "[t]he United States Supreme Court has interpreted the [clearly erroneous] standard to mean '[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.' " 321 S.W.3d at 310 n. 13 (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). "Missouri applies the same 'clearly erroneous' standard to review of a trial court's probable cause determination for abuse of discretion." *Id.*[8]

Under the "clearly erroneous" standard of review, the trial court's findings of fact are entitled to deference even where they are based on physical or documentary evidence which is equally available to an appellate court. *Anderson*, 470 U.S. at 573–74, 105 S.Ct. 1504 (deferential review applies "even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts"); *see also State v. Abeln*, 136 S.W.3d 803, 808 (Mo.App. W.D. 2004) (reviewing trial court's determination that officer lacked reasonable suspicion for traffic stop; "Even where the trial court's decision was based solely 'on the records,' we defer to the trial court as the finder of fact in determining whether there is substantial evidence to support the judgment and whether the judgment is against the weight of the evidence." (citation omitted)).[9]

*Anderson* explained that the justification for affording deference to the trial court's factual determinations was "not limited to the superiority of the trial judge's position to make determinations of credibility," but was also rooted in the trial court's relative expertise, and considerations of judicial efficiency. *Anderson*, 470 U.S. at 574, 105 S.Ct. 1504.

> The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Du-

---

8. Although *White* referred only to appellate review of a trial court's *probable cause* determinations, the *Ornelas* decision on which it relied involved appellate review of both probable cause and reasonable suspicion determinations. *See* 517 U.S. at 691, 116 S.Ct. 1657. *Ornelas* applied the clearly erroneous standard of review to both determinations. Further, while *White* was a civil drivers license suspension case, in its discussion of the standard of review *White* followed *State v. Milliorn*, 794 S.W.2d 181, 183–84 (Mo. banc 1990). *See White*, 321 S.W.3d at 310–11. *Milliorn* was—like this case—an interlocutory appeal of a trial court ruling granting a motion to suppress evidence in a criminal case.

9. The Missouri Supreme Court has applied this same principle—that deference is owed to a trial court's factual findings even where they are not based on credibility determinations—in other contexts. *See, e.g., MSEJ, LLC v. Transit Cas. Co.*, 280 S.W.3d 621, 623 (Mo. banc 2009) (deferential standard of review applied where, in making findings of fact, trial court "did not observe witness testimony but instead reviewed depositions and documentary evidence"; "even though this Court has the same opportunity to review the evidence as does the circuit court, the law allocates the function of fact-finder to the circuit court").

plication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources. In addition, the parties to a case on appeal have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is the correct one; requiring them to persuade three more judges at the appellate level is requiring too much.... [T]he trial on the merits should be the "main event ... rather than a tryout on the road."

*Id.* at 574–75, 105 S.Ct. 1504 (citation omitted).

Here, the circuit court did not clearly err in finding that Williams' passenger side headlight was illuminated at the time of the stop. Based on our review of the dashboard video, the trial court's conclusion that it showed both headlights illuminated is certainly a reasonable one. The video plainly shows light emanating from the area where the passenger side headlight is located. While that light is noticeably dimmer than the light originating from the driver's side headlight, the light on the passenger side appears to be at the same height as the light on the driver's side, suggesting that the light source on the passenger side is the headlight, not the parking light located below the headlight (as Officer Dollens suggested).[10] Moreover, the light appears to be white, and does not appear to be colored by the yellow lens over the parking light. Finally, the video appears to be of sufficient clarity, and Williams' vehicle passed closely enough to Officer Dollens' patrol car, to permit a factfinder to draw the conclusion that it accurately depicts both headlights illuminated.[11]

■ Consistent with the Fourth Amendment to the United States Constitution, "police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity may be afoot." *State v. Peery*, 303 S.W.3d 150, 154 (Mo.App. W.D.2010) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).[12] While "[n]o exact formula exists to define what constitutes reasonable suspicion," *State v. Schmutz*, 100 S.W.3d 876, 880 (Mo.App. S.D.2003), the Fourth Amendment requires "some minimal level of objective justification" for a *Terry* stop. *Immigration & Naturalization Serv. v. Delgado*, 466 U.S. 210, 217, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). Here, the sole justification offered for the stop by Officer Dollens was that the passenger side headlight of Williams' vehicle was not illuminated. While such a traffic infraction would justify a brief traffic stop, the trial court found that no such infraction had in fact occurred. Given the trial court's factual findings, its conclusion that the stop was unlawful is not clearly erroneous, and we will not reverse it.

■ Citing such cases as *United States v. Smart*, 393 F.3d 767, 770 (8th Cir.2005),

10. While the passenger side headlight may be dimmer than the driver's side headlight, Officer Dollens testified that he stopped Williams' truck because the passenger side headlight was *out*. He did not claim, and the State has not argued, that Williams' passenger side headlight was so dim that it failed to provide the level of illumination required by § 307.060.

11. Indeed, we would likely draw the same conclusion as the trial court, even if we reviewed the dashboard video *de novo*.

12. The United States Supreme Court extended *Terry's* "stop and frisk" principles to motor vehicle stops in *Michigan v. Long*, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

the State argues that, even if both of Williams' headlights were functioning properly, Officer Dollens' sincere—but mistaken—belief that the light was off could justify the stop. The State did not raise this argument below, however. In the trial court, the State agreed that it was "asking [the trial court] to make a fact finding," and that the issue was, "was the light out." The prosecutor argued that "it is an issue for the Court to consider whether . . . that equipment violation actually existed." When the court asked for confirmation that "the first sole issue is whether or not there was a headlight on or not a headlight on," defense counsel agreed, and the prosecution offered no clarification or disagreement. From our review of the transcript of the suppression hearing and the hearing on the State's motion to reconsider, as well as that motion itself, the State made no argument that the stop could be justified because Officer Dollens held the objectively reasonable, *but mistaken*, belief that one of Williams' headlights was out. The State cannot now argue for reversal based on an argument it never presented to the trial court.

Even if this issue were preserved, however, it would not justify reversal. Here, Officer Dollens was travelling at medium speed, at night when headlights are most clearly visible, and on a road with no other oncoming traffic besides Williams' vehicle. The record does not reflect any environmental factors that could have contributed to Officer Dollens' mistaken belief, such as precipitation or the interference of other area lighting. Williams' vehicle passed relatively closely to Officer Dollens' patrol car, and from the dashboard video Officer Dollens had a clear and unobstructed view of both headlights of Williams' truck. In these circumstances, we would be hard pressed to conclude that Officer Dollens' mistaken belief as to whether Williams'

passenger side headlight was operational was objectively reasonable.

The State's first Point Relied On is denied. The State's second Point argues that the trial court erred in concluding, in the alternative, that Williams' statements at the police station should be suppressed based on his failure to effectively waive his *Miranda* rights. At oral argument the State acknowledged, however, that we need not reach the *Miranda* issue if we affirm the trial court's Fourth Amendment ruling, because the State acknowledges that Williams' statements at the station constitute "fruit of the poisonous tree" flowing from the traffic stop. We accordingly do not further address the State's second Point Relied On.

## Conclusion

The circuit court's order granting Williams' motion to suppress evidence is affirmed.

All concur.