Justice ALBIN,
concurring.
I fully concur with the Court’s opinion that a deferential standard of review applies in assessing the trial court’s finding in this case. The trial court’s finding that defendant was in custody when questioned without Miranda[3] warnings was based on hearing in-court witness testimony and reviewing defendant’s videotape statement.
Significantly, this ease does not involve a trial court’s fact-finding based solely on the review of a videotape statement. In State v. Diaz-Bridges, 208 N.J. 544, 566, 34 A.3d 748 (2012), in a passing sentence to which no authority is cited, this Court stated that “[w]hen the trial court’s factual findings are based only on its viewing of a recorded interrogation that is equally available to the appellate court and are not dependent on any testimony uniquely available to the trial court, deference to the trial court’s interpre *273 tation is not required.” The standard of review was not an issue in Diaz-Bridges and therefore was not a subject of discussion. The time will come — when the issue is properly raised — to have a serious dialogue and to give thoughtful consideration to the standard of appellate review of trial-court findings based on a videotape of an interrogation or some other event.
A number of jurisdictions have addressed the appellate-review standard when a trial court’s findings are based on videotape of some event, such as an interrogation or a search. Federal appellate courts take a deferential approach in such cases for reasons found in the United States Supreme Court’s decision in Anderson v. Bessemer City, 470 U.S. 564, 574-75, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518, 528-30 (1985). There, the Court listed the policy goals advanced for a deferential appellate standard of review of non-testimonial evidence:
Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous.
This is so even when the district court’s findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts.
The rationale for deference to the original finder of fact is not limited to the superiority of the trial judge’s position to make determinations of credibility. The trial judge’s major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge’s efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources.
[Ibid, (internal citations omitted).]
Federal Rule of Civil Procedure 52(a)(6) was amended the same year that the United States Supreme Court released its decision in Anderson. That Rule provides: “Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court’s opportunity to judge the witnesses’ credibility.” Fed.R.Civ.P. 52(a)(6) (emphasis added).
*274 The Advisory Committee on the 1985 amendments to Fed. R. Civ. P. 52(a) explained its reasons for adopting the clearly erroneous standard for testimonial and non-testimonial evidence:
The principal argument advanced in favor of a more searching appellate review of findings by the district court based solely on documentary evidence is that the rationale of Rule 52(a) does not apply when the findings do not rest on the trial court’s assessment of credibility of the witnesses but on an evaluation of documentary proof and the drawing of inferences from it, thus eliminating the need for any special deference to the trial court's findings. These considerations are outweighed by the public interest in the stability and judicial economy that would be promoted by recognizing that the trial court, not the appellate tribunal, should be the finder of the facts. To permit courts of appeals to share more actively in the fact-finding function would tend to undermine the legitimacy of the district courts in the eyes of litigants, multiply appeals by encouraging appellate retrial of some factual issues, and needlessly reallocate judicial authority.
[Fed.R.Civ.P. 52(a) advisory committee’s note to 1985 amendment.]
Thus, Fed.R.Civ.P. 52(a)(6) calls for the application of the clearly erroneous standard to physical or documentary evidence, including videotapes. Although the Federal Rules of Criminal Procedure do not contain a similar rule, “the considerations underlying Rule 52(a) — the demands of judicial efficiency, the expertise developed by trial judges, and the importance of first-hand observation — all apply with full force in the criminal context, at least with respect to factual questions having nothing to do with guilt.” Maine v. Taylor, 477 U.S. 131, 145, 106 S.Ct. 2440, 2451, 91 L.Ed.2d 110, 125 (1986) (internal citation omitted). For example, findings made by a trial court at a suppression hearing, based on a review of a video recording of a police stop, are given deference. See United States v. Murphy, 703 F.3d 182, 188-89 (2d Cir.2012) (applying dear-error standard in reviewing video evidence in suppression hearing); United States v. Prokupek, 632 F.3d 460, 462-63 (8th Cir.2011) (applying clear-error standard in reviewing video evidence in suppression hearing from traffic stop); United States v. Simpson, 609 F.3d 1140, 1146 (10th Cir.2010) (stating that appellate court “defers to the district court’s finding of facts and reviews them solely for clear error, even when ... there is video tape of the stop and detention”); United States v. Santos, 403 F.3d 1120, 1128 (10th Cir.2005) (“The increasing availability of videotapes of traffic stops due to cameras mounted on patrol cars *275 does not deprive district courts of their expertise as finders of fact, or alter our precedent to the effect that appellate courts owe deference to the factual findings of district courts.”); United States v. Navarro-Camacho, 186 F.3d 701, 707-08 (6th Cir.1999) (applying clear-error standard in reviewing evidence in suppression hearing involving video evidence).
State courts have split on the appropriate standard of appellate review when the evidence at a hearing is a videotape of either an interrogation or some other police interaction. Some state courts favor a deferential standard. See, e.g., Robinson v. State, 5 N.E.3A 362, 365 (Ind.2014) (stating that even when “faced with video evidence,” “appellate standard of review remains constant” and that court “do[es] not reweigh the evidence”); State v. Williams, 334 S.W.3d 177, 181 (Mo.Ct.App.2011) (stating that when reviewing video evidence from suppression hearing “[u]nder the ‘clearly erroneous’ standard of review, the trial court’s findings of fact are entitled to deference even where they are based on physical or documentary evidence which is equally available to an appellate court”); Montanez v. State, 195 S.W.3d 101, 109 (Tex. Crim.App.2006) (embracing U.S. Supreme Court’s approach in Anderson and holding that “deferential standard of review ... applies to a trial court’s determination of historical facts when that determination is based on a videotape recording admitted into evidence at a suppression hearing”).
Other state courts favor a de novo review. See, e.g., People v. Hughes, 378 Ill.Dec. 17, 3 N.E.3d 297, 313 (Ill.App.Ct.2013) (stating that appellate court’s “eyes are just as functional a[s] the trial court’s” in reviewing video evidence evaluated in making suppression ruling), appeal denied, 379 Ill.Dec. 17, 5 N.E.3d 1126 (2014); Commonwealth v. Novo, 442 Mass. 262, 812 N.E.2d 1169, 1173 (2004) (reviewing video evidence de novo and stating that “lower court findings based on documentary evidence available to an appellate court are not entitled to deference”); State v. Binette, 33 S.W.3d 215, 217 (Tenn.2000) (“[WJhen a court’s findings of fact at a suppression hearing are based solely on evidence that does not *276 involve issues of credibility, such as the videotape evidence in this case, the rationale underlying a more deferential standard of review is not implicated.”).
The law must adapt to technological advances. The videotaping of interrogations has become a current law enforcement practice and is mandated by court rule in defined circumstances. See R. 3:17. Today, video cameras are mounted in many police vehicles recording motor vehicle stops and searches. Body cameras worn by police officers may soon be an integral part of an officer’s uniform. In the near future, it may be that an officer’s interaction with a suspect will be video-recorded from beginning to end, from a street arrest to an interrogation at police headquarters.
Whether a videotape of events is the sole evidence or one piece of evidence should not be determinative of the standard of review. It does not follow logically that a videotape of an interrogation when mixed with live testimony should be viewed deferentially, but when standing alone should be viewed without deference. The standard of review for fact-findings of videotape evidence should not vary from one hearing to another.
How appellate courts review a trial court’s fact-findings based on a videotape is an important judicial-policy issue. On the proper occasion, when the issue is squarely before us, we should give full consideration to all the competing rationales favoring either deference or de novo review.
For reversal and remandment — Chief Justice RABNER and Justices LaVECCHIA, ALBIN, PATTERSON, FERNANDEZYINA, SOLOMON and Judge CUFF (temporarily assigned) — 7.
Opposed — -None.

 Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).