

# Missouri Court of Appeals

## Southern District

### Division Two

STATE OF MISSOURI,                    )
                                      )
    Plaintiff-Appellant,          )
                                      )
v.                                    )          No. SD33961
                                      )
DAVID KEVIN HOLMAN,                   )          Filed:  March 11, 2016
                                      )
    Defendant-Respondent.         )

### APPEAL FROM THE CIRCUIT COURT OF LAWRENCE COUNTY

Honorable Jack A.L. Goodman, Circuit Judge

### REVERSED AND REMANDED WITH DIRECTIONS

The State appeals the trial court's order sustaining David Kevin Holman's ("Defendant") motion to suppress statements he made to law enforcement.[1]  The State's single point claims the trial court erred in granting Defendant's motion "because Defendant did not unequivocally assert his Fifth Amendment right to counsel, in that Defendant only refused to sign [a] consent to search form without an attorney but did not otherwise refuse to communicate with the police."  Because the police honored Defendant's unambiguous, limited invocation of his rights, we reverse the challenged order and direct the trial court to enter an order denying Defendant's motion to suppress.

---

[1] Section 547.200.1(4) grants the State an interlocutory appeal from an order suppressing a confession or admission.  All statutory references are to RSMo 2000.

1

**Standard of Review**

We review the grant of a motion to suppress to determine whether sufficient evidence supports the trial court's ruling, **State v. Glisson**, 80 S.W.3d 915, 917 (Mo. App. S.D. 2002), and will reverse only if the ruling was clearly erroneous. **Id.** "When the issue to be decided involves the constitutional protection against forced self-incrimination, our review of the trial court's ruling is a two-part inquiry: we defer to the trial court's determinations of witness credibility and findings of fact, but consider the court's conclusions of law *de novo*." **State v. Norman**, 431 S.W.3d 563, 568-69 (Mo. App. E.D. 2014) (internal quotations omitted).

Because the trial court decided the motion on stipulated facts, we review *de novo* whether the trial court drew the proper legal conclusions from the stipulated facts. *Cf.* **State v. Avent**, 432 S.W.3d 249, 253 (Mo. App. W.D. 2014).

**Stipulated Facts[2] & Trial Court's Ruling**

At approximately 12:00 a.m. on December 10, 2013, RaDonna Holman ("RaDonna") shot Defendant in the back of the arm with a .40 caliber handgun. Defendant returned fire and struck RaDonna with what turned out to be a fatal shot. Defendant began CPR on RaDonna and dialed 9-1-1.

Lawrence County Deputies Ryan Devost ("Deputy Devost") and Michael Thorn ("Deputy Thorn") arrived at the residence. After completing a protective sweep, Deputy Devost placed Defendant in handcuffs and removed him from the residence. Deputy Devost

---

[2] We agree with the dissenting opinion's statement that under a clearly erroneous standard of review, we defer to the trial court's factual findings "even where they are based on physical or documentary evidence which is equally available to an appellate court." **State v. Williams**, 334 S.W.3d 177, 181 (Mo. App. W.D. 2011). But that deferential standard of review is not applicable in this case. The dissenting opinion's assertion that a question of fact exists in the instant case is inconsistent with the Statement of Facts in Defendant's brief, the first sentence of which states: "At the hearing on the [m]otion to [s]uppress, the parties stipulated to the facts presented to the [trial court.]" Because no material facts are in dispute, this case, as discussed, *infra*, presents solely a legal question that we review *de novo*.

2

informed arriving paramedics that Defendant had been shot. As RaDonna's injuries were more serious, the paramedics first provided care to her. Deputy Devost placed Defendant in a patrol car to await treatment.

The paramedics exited the residence, and Deputy Thorn escorted Defendant to an ambulance to be examined. Deputy Devost, who had been taping off the scene, went to the ambulance and spoke with Defendant. Deputy Devost read Defendant his *Miranda*[3] rights and asked him to sign a form granting the officers consent to search his home. To that inquiry, Defendant responded, "I ain't signing shit without my attorney." Defendant was not asked any additional questions that day.

Deputy Devost advised detectives on scene that he had read Defendant his *Miranda* rights and relayed Defendant's response when asked to sign a consent to search form. Defendant was then transported to Mercy Hospital in Springfield and treated for his wound.

Upon his discharge from the hospital, Defendant was taken to the Lawrence County jail. The following morning, Lawrence County Detective Linda McElroy ("Detective McElroy") retrieved Defendant from his jail cell, read him his *Miranda* rights and asked Defendant if he understood those rights. Defendant said that he did, and he continued to speak with Detective McElroy.[4] Defendant did not execute any document or otherwise

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[4] Evidence of when Defendant left the hospital, whether he had been admitted or received outpatient care, when he arrived at the jail, and when Detective McElroy began her questioning is not included in the record. The sequence of events as asserted by Defendant in his suggestions supporting his motion to suppress is as follows:

> Upon being discharged from Mercy Hospital [Defendant] was taken to the Lawrence County jail. At approximately 11:30 AM [Detective] McElroy [r]etrieved [Defendant] from his jail cell, advised him of his constitutional rights per *Miranda* and asked if [Defendant] understood such rights. [Defendant] responded "yes," and then [Detective] McElroy began questioning him.

What Defendant actually said during the interview is also not apparent from the record. The following colloquy during the motion hearing probably explains why.

acknowledge in writing that he was waiving his constitutional rights, and Defendant had not attempted to initiate any communication with the police after being taken to the jail. Defendant was subsequently charged with first-degree murder, *see* section 565.020, and armed criminal action, *see* section 571.015.

In granting Defendant's motion to suppress, the trial court found that Defendant's statement, "I ain't signing shit without my attorney" indicated that he would not consent to anything without the benefit of having an attorney present. The trial court based this conclusion on the fact that Defendant did not "affirmatively pronounce any exceptions to his invocation[.]" The State now timely appeals that decision.[5]

## Analysis

The sole issue for our determination is a question of law: whether Defendant's statement, "I ain't signing shit without my attorney[,]" when given in response to a request to sign a consent to search form, constituted an objective, unambiguous, unequivocal, and specific request for counsel that prohibited officers from interrogating Defendant the next morning without an attorney present.[6]

> To protect the privilege against self-incrimination guaranteed by the Fifth Amendment, the police must terminate their interrogation of an accused in custody if the accused requests the assistance of counsel. The accused must make an objective, unambiguous, unequivocal, and specific request for counsel to invoke his Fifth

---

| BY [the prosecutor]: | Now, then [Defendant] goes into making statements on where he was standing and what happened. Do you want me to go into the detail of all that? |
| BY THE COURT: | I don't know if the content of the statements matter. What I need is how the approach was made. |

[5] Under section 547.200.4, the State was required to file its notice of appeal within five days of the trial court's order. The State filed its notice of appeal with the Supreme Court of Missouri the day after the trial court's order was entered. Our high court subsequently transferred the cause to this court.

[6] The State also argues -- for the first time in this appeal -- that Defendant was not being "interrogated" for the purposes of *Miranda*, and that, consequently, any invocation of counsel at that time was premature. Because this argument was not presented to and decided by the trial court, we do not consider it. *See* **State v. Stone**, 430 S.W.3d 288, 291 (Mo. App. S.D. 2014).

Amendment right to counsel. The desire to have counsel present must be sufficiently and clearly articulated so that a reasonable police officer under the circumstances would understand the statement to be a request for an attorney. The accused cannot be subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. Law enforcement officials may not restart interrogation without counsel present regardless of whether the accused has consulted with his attorney. However, if the statement of a desire to have counsel present fails to meet the requisite level of clarity for police officers to understand it as a request for an attorney, the officers are not required to stop questioning the accused.

*Norman*, 431 S.W.3d at 569 (internal quotations and citations omitted).

The accused may also invoke a qualified right to counsel that is limited to the circumstances set forth by the accused. *Connecticut v. Barrett*, 479 U.S. 523, 528 (1987). If authorities honor that qualified invocation, they may otherwise question an accused without offending the Fifth Amendment. *Id.* at 529-30. Generally, alleged invocations of counsel should be interpreted broadly in favor of the accused, but police officers are not required to interpret a limited request as an assertion of a general unlimited right to counsel. *Id.* "Interpretation is only required where the defendant's words, understood as ordinary people would understand them, are ambiguous." *Id.* at 529.

Here, an ordinary person would have understood that Defendant was simply refusing to sign the consent to search form without an attorney present. *See U.S. v. Martin*, 664 F.3d 684, 685-86, 689 (7th Cir. 2011) (finding invocation was unambiguous and limited to written statements where the defendant was asked if he would provide a written statement to officers and responded, "I'd rather talk to an attorney first before I do that").

"Although the courts ensure compliance with the *Miranda* requirements through the exclusionary rule, it is police officers who must actually decide whether or not they can question a suspect." *Davis v. U.S.*, 512 U.S. 452, 461 (1994). "The *Edwards* [*v. Arizona*, 451 U.S. 477, 484-85 (1981)] rule—questioning must cease if the suspect asks for a

5

lawyer—provides a bright line that can be applied by officers in the real world of investigation and interrogation without unduly hampering the gathering of information." *Id.* "*Edwards* requires courts to determine whether the accused *actually invoked* his right to counsel." *Davis*, 512 U.S. at 458 (quotations omitted). "To avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry[,]" *id.* at 458-59 (citing *Barrett*, 479 U.S. at 529), which we view from the perspective of a reasonable police officer under the circumstances. *State v. Haslett*, 283 S.W.3d 769, 784 (Mo. App. S.D. 2009). "[T]he *likelihood* that a suspect would wish counsel to be present is not the test for applicability of *Edwards*." *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991).

"The rationale underlying *Edwards* is that the police must respect a suspect's wishes regarding his right to have an attorney present during custodial interrogation." *Davis*, 512 U.S. at 460. In this circumstance, where Defendant has not clearly articulated his desire to have an attorney present during custodial interrogation and police have honored Defendant's limited invocation of counsel, neither *Edwards* nor *Barrett* is offended.

Defendant argues that *Barrett*'s recognition of a limited invocation of counsel was premised on the defendant making an affirmative statement as to the manner in which he was *not* invoking his right to counsel (i.e., that *Barrett* required the defendant to state that he would engage in verbal communication with police, in addition to the defendant's statement that he would not make a written statement without an attorney).[7] While Defendant's

---

[7] Defendant makes the same argument regarding *State v. Hunter*, 840 S.W.2d 850, 870 (Mo. banc 1992). Similar to *Barrett*, *Hunter* does not stand for the proposition that an affirmative statement is required as to the manner in which the defendant was not invoking his right to counsel. *Cf. State v. Blackman*, 875 S.W.2d 122, 137 (Mo. App. E.D. 1994) (citing *Barrett* and *Hunter* and finding no Fifth Amendment violation where invocation was limited to learning whether the defendant's attorney had successfully "recalled" a warrant in an unrelated case, despite the defendant making no affirmative statements as to how he would speak with police).

6

factual assertion is true regarding the statements made in **Barrett**, the holding in the case was not premised on the addition of such language.

To the contrary, if the specific limitation is not ambiguous, it is sufficient to demonstrate that the accused was not unwilling to speak with officers. *See **Martin***, 664 F.3d at 689. *See also **U.S. v. Mohr***, 772 F.3d 1143, 1146 (8th Cir. 2014) (finding no Fifth Amendment violation where officers asked the defendant if they could record an interview, defendant stated he wanted his lawyer if police were going to record the interview, and police proceeded with an unrecorded interview); ***U.S. v. Ivy***, 929 F.2d 147, 152-53 (5th Cir. 1991) (finding unambiguous, limited invocation where the defendant stated he would not answer questions on a particular subject without first talking to his lawyer and police continued questioning on other subjects); ***U.S. v. Boyer***, 914 F.2d 144, 146 (8th Cir. 1990) (finding ordinary meaning of the defendant's request for an attorney before he would assist police in making a tape-recorded telephone call to a person whom he had sent drugs was that the defendant's invocation of counsel only applied to making a tape-recorded phone call).

Here, the stipulated facts reveal that Defendant was asked if he would sign a form that would give law enforcement permission to search Defendant's home, and Defendant responded by saying that he would not sign anything without his attorney. Under these circumstances, "[t]o conclude that [Defendant] invoked his right to counsel for all purposes requires not a broad interpretation of an ambiguous statement, but a disregard of the ordinary meaning of [Defendant]'s statement." **Barrett**, 479 U.S. at 529-30.

The State's point is granted, the trial court's order suppressing Defendant's statements is reversed, and the trial court is directed to enter an order denying the motion.

7

DON E. BURRELL, P.J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – DISSENTS IN SEPARATE OPINION

WILLIAM W. FRANCIS, JR., J. – CONCURS



# Missouri Court of Appeals

## Southern District

### Division Two

STATE OF MISSOURI,                    )
                                      )
    Plaintiff-Appellant,              )
                                      )
v.                                    )     No. SD33961
                                      )
DAVID KEVIN HOLMAN,                   )     **Filed:  March 11, 2016**
                                      )
    Defendant-Respondent.             )

APPEAL FROM THE CIRCUIT COURT OF LAWRENCE COUNTY

Honorable Jack A.L. Goodman, Circuit Judge

**DISSENTING OPINION**

I must respectfully dissent.  Although the majority opinion states that our analysis is *de novo* because the trial court decided the motion on stipulated facts, in actuality the court conducted a hearing and reviewed exhibits, including the depositions and reports of the police officers.

Where a trial court has granted a defendant's motion to suppress, we review the trial court's decision on appeal under an abuse of discretion standard. Only if the trial court's judgment is clearly erroneous will an appellate court reverse.  Review is limited to determining whether the decision is supported by substantial evidence.  In making that determination, the facts and reasonable inferences from such facts are considered favorably to the trial court's ruling and contrary evidence and inferences are disregarded.  We defer to the factual findings and credibility determinations made by the circuit court, remembering that the circuit court may choose to believe or disbelieve all or any part of the testimony presented by the State, even though it may be uncontradicted, and may find the State failed to meet

its burden of proof.[] The weight of the evidence and the credibility of the witnesses are for the trial court's determination.

*State v. Avent*, 432 S.W.3d 249, 252 (Mo.App. W.D. 2014) (internal quotations and citations omitted). In a footnote the court noted:

> [4] "Under the 'clearly erroneous' standard of review, the trial court's findings of fact are entitled to deference even where they are based on physical or documentary evidence which is equally available to an appellate court." *State v. Williams,* 334 S.W.3d 177, 181 (Mo.App. W.D.2011). "'Even where the trial court's decision was based solely 'on the records,' we defer to the trial court as finder of fact in determining whether there is substantial evidence to support the judgment and whether the judgment is against the weight of the evidence.'" *Id.* (quoting *State v. Abeln,* 136 S.W.3d 803, 808 (Mo.App. W.D.2004)).

*Id.* at 252 n.4.

> The court asked questions at the hearing of counsel:
>
> [Court]: Let me ask counsel this question. I think it may be relevant as the Court tries to determine the meaning of the defendant's reported assertion of the right to counsel and the context of it and whether or not it is clear and unequivocal. I think in evaluating the impact of the defendant's words it is important for the Court to understand if that was in response to a specific request or a specific question, how close in time the question was to a statement made by the defendant. Do you all have a stipulation as to that?
>
> [Prosecutor]: It was immediate.
>
> [Defense counsel]: It was immediate even upon the, you know, I am reading you your Miranda rights, will you sign a consent to search form, I ain't signing shit without my attorney.

The court ended the hearing by stating, "That is a fact question." Defense counsel replied, "Yes, sir." From that hearing and review, the trial court stated:

> This court must determine if Defendant stating, "I ain't signing shit without my attorney" in response to the deputy's request that Defendant sign a form giving consent to search precludes law enforcement from initiating further questioning of the Defendant before counsel is made available to the Defendant. . . . [review of the pertinent law] . . . .
> In this case, Defendant achieves the requisite level of clarity. The phrase "I ain't signing shit without my attorney," uttered in response to the

2

reading of *Miranda* rights and the request to sign a form giving consent to search Defendant's home, clearly indicates that the Defendant does not wish to engage with the police without counsel. Without question, the Defendant invoked the right to counsel in regard to the requested consent to search and any other matter that would require his signature. Colloquially, the phrase "I ain't signing shit without my attorney" more likely indicates that Defendant won't consent to anything without the benefit of legal counsel. Caselaw requires a broad, rather than narrow, interpretation of a defendant's request for counsel. *Oregon v. Bradshaw*, 462 U.S. 1039, 1041 (1983); *Edwards* at 479; *Connecticut v. Barrett*, 479 U.S. 523, 529 (1987). In *Connecticut*, the U.S. Supreme Court held that interpretation is required only where defendant's words, understood as ordinary people would understand them, are ambiguous. In this case, there is no ambiguity that Defendant was invoking the right to counsel.

The State asserts there is an ambiguity surrounding the extent of Defendant's invocation of the right to counsel, i.e., the Defendant asserted the right to counsel as to his consent to the search of his home only. Again, the general rule in such an instance comes from *Edwards* and its progeny: "[a]n accused, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police." The only cases provided to the court recognizing conditional or limited invocations of the right to counsel appear restricted to situations where the accused clearly, proactively, affirmatively enunciates the conditions under which they are not invoking the right to counsel. *Connecticut* at 529-530; *State v. Hunter*, 840 S.W.2d 850 (Mo. banc 1992). In *Connecticut*, the accused clearly articulated he was willing to give an oral statement without counsel. *Connecticut* at 525. In *Hunter*, the accused clearly articulated he was willing to talk to law enforcement without an attorney if no reward money was being offered. *Hunter* at 870. In this case, the Defendant did not affirmatively pronounce any exceptions to his invocation, thus the ambiguity must be construed in favor of a broad invocation of the right.

The subsequent interrogation was not initiated by the Defendant and he had no access to counsel prior to its initiation. Thus, it was impermissible.

Given (1) our standard of review, (2) that the State had the burden of showing by a preponderance of the evidence that the motion to suppress should be denied, (3) that the trial court is presumed to have found all facts in accordance with its ruling, and (4) that if the ruling is plausible, in light of the record viewed in its entirety, we will not reverse, even if we would have weighed the evidence differently, I believe the order sustaining the motion to

suppress is not clearly erroneous. The trial court's conclusion that the Defendant's phrase "[*c*]*olloquially* . . . more likely indicates that Defendant won't consent to anything without the benefit of legal counsel" is as plausible as the claim that Defendant was only responding to a specific question about a search warrant. Given the direction from the U.S. Supreme Court that the words of the Defendant should be broadly interpreted, I would affirm the trial court.

Nancy Steffen Rahmeyer, J. – Dissenting Opinion Author